**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SEPARATION OF HINDUISM FROM OUR SCHOOLS, an unincorporated association; CIVIL LIBERTIES FOR URBAN BELIEVERS, an unincorporated association; DASIA SKINNER; AMONTAE WILLIAMS; and DARRYL WILLIAMS, <br><br> Plaintiffs, <br><br> v. <br><br> CHICAGO PUBLIC SCHOOLS, City of Chicago School District #299; THE DAVID LYNCH FOUNDATION; and THE UNIVERSITY OF CHICAGO, <br><br> Defendants. | Case No. |

**COMPLAINT**

NOW COME the Plaintiffs, SEPARATION OF HINDUISM FROM OUR SCHOOLS, an unincorporated association, CIVIL LIBERTIES FOR URBAN BELIEVERS, an unincorporated association, DASIA SKINNER, AMONTAE WILLIAMS, and DARRYL WILLIAMS (collectively "Plaintiffs"), by and through their attorneys, MAUCK & BAKER, LLC, and hereby complain of Defendants CHICAGO PUBLIC SCHOOLS, THE DAVID LYNCH FOUNDATION, and THE UNIVERSITY OF CHICAGO (collectively "Defendants"), as follows:

**INTRODUCTION**

1. Plaintiffs seek redress under 42 U.S.C. § 1983 for deprivations of their constitutional rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs also

seek redress for violations of the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1, et seq.

2. Defendants violated the Establishment and Free Exercise Clauses of the First Amendment to the United States Constitution when they collaborated to implement and facilitate the "Quiet Time" program within certain CPS schools.

3. Although all named Defendants have made statements to the contrary, the "Quiet Time" program is based in Hindu beliefs and the practice of "Transcendental Meditation" is fundamentally religious in nature.

4. Plaintiffs' rights under the First Amendment were violated when Defendants created environments within public schools where Hindu beliefs and the practice of "Transcendental Meditation" were being endorsed and students were coerced to engage in religious practices against their wills.

5. Defendants, by collaborating to implement and facilitate the "Quiet Time" program within certain CPS schools, also violated the Illinois Religious Freedom Restoration Act by substantially burdening the religious free exercise rights of CPS students.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343.

7. This Court has supplemental jurisdiction over the substantially related state law matters under 28 U.S.C. § 1367(a).

8. The Court has the authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and injunctive relief under Federal Rules of Civil Procedure 7 and 65.

9. Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to these claims occurred within the Northern District of Illinois.

## PARTIES

10. Plaintiff Separation of Hinduism from our Schools is an unincorporated association of parents, students, and others who want to remove Hindu-based religious practices, concealed as "Transcendental Meditation," from our public schools.

11. Plaintiff Civil Liberties for Urban Believers ("CLUB") is an unincorporated association of churches and ministries located in Chicago, Illinois. CLUB seeks to protect religious civil liberties particularly relating to the First Amendment's Free Exercise and Establishment Clauses. It is organized and directed by the Holy Spirit. Plaintiff CLUB has prepared a declaration that is attached and incorporated by reference as **Exhibit A**.

12. Plaintiff Dasia Skinner is a substitute teacher who accepted assignments to teach students at two CPS schools that hosted the "Quiet Time" program. Plaintiff Dasia Skinner has prepared a declaration that is attached and incorporated by reference as **Exhibit B**.

13. Plaintiff Amontae Williams is a former CPS student, who recently graduated from a CPS school that hosted the "Quiet Time" program. Plaintiff Amontae Williams has prepared a declaration that is attached and incorporated by reference as **Exhibit C**.

14. Plaintiff Darryl Williams is a parent of Plaintiff Amontae Williams. Plaintiff Darryl Williams has prepared a declaration that is attached and incorporated by reference as **Exhibit D**.

15. Defendant Chicago Public Schools ("CPS"), officially classified as City of Chicago School District #299, is the fourth largest school district in the United States. CPS recently reported overseeing 652 schools, including 477 elementary schools and 165 high schools. CPS claims an enrollment of over 355,000 students. CPS schools are funded in part through local property taxes.

16. Defendant David Lynch Foundation ("DLF") is an Iowa not-for-profit corporation headquartered in New York City and registered to do business in Illinois and a 501(c)(3)

organization with a stated mission of "promoting widespread implementation of the . . . Transcendental Meditation ("TM") program" with a specific focus on "inner-city students." About DLF, https://www.davidlynchfoundation.org/about-us.html (last visited Jul. 20, 2020), **Exhibit G**. DLF's program targeting implementation within urban schools is known as "Quiet Time" ("QT"). On its website, DLF states that it has successfully aided the implementation of the Quiet Time program in "hundreds of public, private and charter schools worldwide" and the organization solicits donations to pursue its intention to "expand the Quiet Time program in the U.S. and around the world." Quiet Time with Transcendental Meditation in Schools, https://www.davidlynchfoundation.org/schools.html (last visited Jul. 20, 2020), **Exhibit H**. On its website, DLF also identifies Chicago as one of four locations where the organization is particularly interested "to expand the network of schools with Quiet Time programs." Funding Guidelines Underserved Schools, https://www.davidlynchfoundation.org/funding-guidelines-underserved-schools.html (last visited Jul. 20, 2020), **Exhibit I**.

17. Defendant University of Chicago, acting through the Crime and Education Labs of the University of Chicago Urban Labs, worked collaboratively with Defendants CPS and the David Lynch Foundation to plan and conduct a research project designed to implement the "Quiet Time" program within multiple CPS schools. The University of Chicago Urban Labs are a group of five research laboratories working "to address challenges across five key dimensions of urban life: crime, education, health, poverty, and energy & environment." Defendant Urban Labs "partner[s] with civic and community leaders to identify, test, and help scale the programs and policies with the greatest potential to improve human lives."

18. Although CPS is a governmental entity and, upon information and belief, the David Lynch Foundation and the University of Chicago are private entities, all defendants acting in

concert were acting under color of law during the time periods relevant to this action. <u>Dennis v. Sparks</u>, 449 U.S. 24, 27–28 (1980)

## BACKGROUND

19. "Transcendental Meditation" is a specific type of silent meditation, involving the use of mantras, that was developed by Maharishi Mahesh Yogi in India in the 1950s.

20. Proponents of "Transcendental Meditation" claim that the technique can help students to improve academic performance and reduce stress and violence.

21. Upon information and belief, the David Lynch Foundation approached the University of Chicago Urban Labs with a proposal to run a research project involving running the "Quiet Time" program within certain CPS schools.



**TM Founder Maharishi Mahesh Yogi in Huntsville in January 1978** *(Jdontfight / CC BY-SA (https://creativecommons.org/licenses/by-sa/3.0))*

22. Upon information and belief, the University of Chicago Urban Labs agreed to run the proposed research project and were involved in jointly approaching CPS with the project proposal.

23. Upon information and belief, CPS, the University of Chicago Urban Labs, and the David Lynch Foundation worked collaboratively to establish parameters for the "Quiet Time" program within CPS schools.

24. Upon information and belief, CPS, the University of Chicago Urban Labs, and the David Lynch Foundation worked collaboratively to implement the "Quiet Time" program within CPS schools.

25. The "Quiet Time" program took place during regular school hours and utilized space located on school property which was specifically designated for the use of the program.

26. The "Quiet Time" program was designed to provide instruction in—and to facilitate the practice of—"Transcendental Meditation" by CPS students.

### *"Puja" Initiation Ceremony*

27. The practice of "Transcendental Meditation" requires participation in an initiation ceremony, also known as a "Puja."

28. "Puja" initiation ceremonies must be led by "Transcendental Meditation" instructors, certified by the Maharishi Foundation USA, a 501(c)(3) founded by Maharishi Mahesh Yogi.



**"Puja" shrine constructed around an image of Guru Dev**

29. During a "Puja" initiation ceremony, various bowls, food items, and symbolic items are arranged around a picture of Guru Dev, a former teacher of Maharishi Mahesh Yogi, the founder of Transcendental Meditation."

30. During a "Puja" initiation ceremony, specific items are presented to the picture of Guru Dev while the "Transcendental Meditation" instructor performs a chant in Sanskrit, which

is also accompanied by certain rehearsed movements.

31. At CPS schools, "Puja" initiation ceremonies involving either individual or small groups of students were performed in private by the certified "Transcendental Meditation" instructors.

32. CPS students were asked to actively participate in the "Puja" by bringing certain items to be presented to the image of Guru Dev.

33. The certified "Transcendental Meditation" instructors did not identify the person appearing in the photograph displayed on the table.

34. The certified "Transcendental Meditation" instructors did not explain the significance of presenting various items to the photograph displayed on the table.

35. CPS students were asked to remain present while the certified "Transcendental Meditation" instructor performed a ritual involving the chanting of Sanskrit words coordinated with certain movements.

36. The certified "Transcendental Meditation" instructors did not explain the meaning behind the Sanskrit words they were chanting during the "Puja" initiation ceremony.

37. When translated into English, the Sanskrit words chanted during the "Puja" initiation ceremony contain, among other things, statements recognizing the power possessed by various Hindu deities and invitations to those same Hindu deities to channel their powers through those in attendance at the "Puja" initiation ceremony.

38. Proponents of "Transcendental Meditation" consider the "Puja" initiation ceremony critical to the practice of "Transcendental Meditation," because the "Puja" establishes the necessary connection between a practitioner and the entities that ultimately make the technique effective.

39. Every CPS student that participated in the "Quiet Time" program was asked to participate in a "Puja" initiation ceremony.

40. Each "Puja" initiation ceremony was led by a certified "Transcendental Meditation" instructor, during regular school hours, in a space located on school grounds but set aside for the exclusive use of the "Quiet Time" program.

41. The certified "Transcendental Meditation" instructors took steps to ensure that the spaces used for "Puja" initiation ceremonies remained private, by keeping doors closed, turning off the lights during the "Puja," and covering windows to block any outside view into the rooms.

*Mantras*

42. The practice of "Transcendental Meditation" involves silent meditation, with encouragement to utilize an assigned mantra to assist in the meditative process.

43. During meditation, "Transcendental Meditation" practitioners are taught to silently repeat their mantras.

44. Certified "Transcendental Meditation" instructors told CPS students that mantras are "meaningless sounds."

| ॐ | श्रीं | ह्रीं | क्रीं | हूं |
|---|---|---|---|---|
| Om | Shrim | Hrim | Krim | Hum |
| ऐं | फट् | क्रौं | स्वाहा | क्रूं |
| Aim | Phat | Krom | Svaha | Klim |
| हुं | ह्रौं | द्रीं | स्फें | प्लूं |
| Hum | Hraum | Drim | Sphem | Plrem |
| क्रीं स्वाहा | ठः | म्रीं | ठंठं ठःठः | स्फीं |
| Klrim Svaha | Thah | Prim | Tham Tham Thah Thah | Sphim |
| हूं | हुं | हस्रख्फ्रें | गं | ब्लूं |
| Hrum | Hrum | Hskphrem | Gam | Blum |

**Chart of Common TM Mantras**

45. CPS students were also told that they should only utilize a mantra that has been uniquely assigned to them by a certified "Transcendental Meditation" instructor.

46. During their respective "Puja" initiation ceremony, the CPS students were taught how to pronounce their assigned mantra, but were not given the meaning or significance behind the

Sanskrit words themselves.

47. Mantras are drawn from a select pool of Sanskrit words that honor or reference specific Hindu deities.

48. For example, the "Aim" mantra is associated with the deity Saraswati, who is the Hindu goddess of knowledge, music, art, wisdom, and learning.

49. Every CPS student that participated in the "Quiet Time" program was assigned a mantra and instructed to silently repeat it whenever engaged in CPS meditation sessions.

*Secretive Nature*



50. The practice of "Transcendental Meditation" involves an oath to secrecy.

51. "Transcendental Meditation" practitioners are warned to not discuss any details of what they heard, saw, or experienced during the "Puja" initiation ceremony.

52. "Transcendental Meditation" practitioners are warned to not reveal their mantras to others.

53. "Transcendental Meditation" practitioners are warned to not recount to others any of their private interactions with certified "Transcendental Meditation" instructors.

54. Every CPS student that participated in the "Quiet Time" program was instructed to keep their experiences with respect to the program secret from others, including their parents,

other students, and their friends.

55. "Quiet Time" participants were further warned that failing to keep the oath to secrecy would render the practice of "Transcendental Meditation" wholly ineffective.

*CPS Meditation Sessions*

56. The "Quiet Time" program involved requiring CPS students to engage in two 15-minute meditation sessions, one in the morning and one in the afternoon of every school day.

57. During each CPS meditation session, students were instructed to be silent.

58. Each CPS meditation session was led by a certified "Transcendental Meditation" instructor.

59. A small handheld bell, also known as a "Ghanta" or ritual bell commonly used in Hinduistic religious practices, was rung by the certified "Transcendental Meditation" instructor to indicate the beginning of each CPS meditation session.

60. In the Hindu belief system, bells are often used to indicate a desire to interact with a deity and to prepare a listener's mind for said interaction.

61. CPS, the University of Chicago Urban Labs, and the David Lynch Foundation all made representations, either directly or indirectly, to students and parents that the "Quiet Time" program and "Transcendental Meditation" is non-religious in nature.

62. By failing to disclose the religious nature of the "Quiet Time" program, students and parents were not given a fair opportunity to decide whether to opt out of participation in the program. Declarations discussing the hidden religious nature of "Transcendental Meditation," and the "Quiet Time" program by extension, are attached and incorporated by reference as **Exhibits E & F**.

## COUNT I
### VIOLATION OF THE ESTABLISHMENT AND FREE EXERCISE CLAUSES

(First Amendment)
(All Defendants)

63. Plaintiffs incorporate Paragraphs 1–62 as if fully restated here.

64. The Establishment and Free Exercise Clauses of the First Amendment to the United States Constitution provide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." These prohibitions apply equally to the official acts of local governmental entities, including the Chicago Public Schools and its officers and employees, through the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

65. The Chicago Public Schools' practice of facilitating the "Quiet Time" program within certain CPS schools violates the Establishment and Free Exercise Clauses for all the reasons that follow.

66. CPS' practice coerces students and others to engage in religious practices and rituals that are based in Hinduism, and thus violates both the Establishment Clause and the Free Exercise rights of the students.

67. CPS' practice communicates a message that the District endorses and favors the Hindu belief system and the practice of "Transcendental Meditation."

68. CPS' practice excessively entangles the government with religion, and leads to religious divisiveness in CPS schools and within the community.

69. CPS' practice causes taxpayer funds to support the practice of "Transcendental Meditation" and the propagation of the religious views specific to "Transcendental Meditation."

70. CPS also violated the Establishment and Free Exercise Clauses by making participation in the "Quiet Time" program effectively mandatory for all students at certain CPS schools.

71. CPS students were told by school officials that all students must participate in the "Quiet

Time" program.

72. Students who received parental opt-outs were nevertheless also pressured to participate.

73. Students who did not want to participate in the "Quiet Time" program were warned that their failure to participate could impact their grades and disqualify them from participating in their respective graduation ceremonies.

74. Certified "Transcendental Meditation" instructors were presented to students as authority figures, and permitted to interact with students in private, without adequate oversight from CPS employees.

75. Certified "Transcendental Meditation" instructors repeatedly pressured students to participate in the "Quiet Time" program.

76. Certified "Transcendental Meditation" instructors targeted certain students, due to their popularity with peers, for the purpose of trying to influence other students to participate in the "Quiet Time" program.

77. Certified "Transcendental Meditation" instructors offered incentives to students in exchange for participation in the "Quiet Time" program, in the form of food, money, and other special privileges.

78. These actions undertaken by the certified "Transcendental Meditation" instructors had the cumulative effect of creating an environment that pressured students to engage in religious practices against their wills.

79. However, even if parents and students had been given greater opportunity to opt-out of the program, the "Quiet Time" program, operating within CPS schools, itself constitutes a violation of the Establishment and Free Exercise Clauses of the First Amendment to the United States Constitution.

80. By violating the Establishment and Free Exercise Clauses as set forth above, CPS has injured Plaintiffs and other former CPS students, and threatens continued or future injury to Plaintiffs and other current CPS students.

81. By violating the Establishment and Free Exercise Clauses as set forth above, CPS has, under color of statutes, ordinances, regulations, policies, custom, or usage, deprived or threatened to deprive Plaintiffs of rights secured by the First and Fourteenth Amendments to the United States Constitution, entitling them to a remedy under 42 U.S.C. § 1983.

82. By collaborating with CPS to implement the "Quiet Time" program within CPS schools, the David Lynch Foundation and the University of Chicago jointly participated in the constitutional deprivation against Plaintiffs.

83. Implementation of the "Quiet Time" program within CPS schools has caused Plaintiffs and other CPS students to experience anger and anxiety over personal salvation. The program has pressured and coerced students to engage in religious practices that are contrary to their personal beliefs and the religious instruction provided by parents, guardians, and their respective faith communities.

**COUNT II**
VIOLATION OF ILLINOIS RELIGIOUS FREEDOM RESTORATION ACT
(775 ILCS 35/1, et seq.)
(All Defendants)

84. Plaintiffs incorporate Paragraphs 1–83 as if fully restated here.

85. Under the Illinois Religious Freedom Restoration Act, the "[g]overnment should not substantially burden the exercise of religion without compelling justification." 775 ILCS 35/10(a)(3).

86. The joint actions of Defendants have substantially burdened the religious exercise rights of CPS students.

87. The implementation and facilitation of the "Quiet Time" program within CPS schools was neither in furtherance of a compelling governmental interest nor the least restrictive means of furthering a compelling governmental interest.

## JURY DEMAND

88. Plaintiffs demand a trial by jury on all the issues so triable.

## RELIEF REQUESTED

89. Plaintiffs incorporate Paragraphs 1–88 as if fully restated here.

90. Plaintiffs respectfully request a declaratory judgment that the practice of "Transcendental Meditation," and the "Quiet Time" program by extension, is fundamentally religious in nature.

91. Plaintiffs respectfully request a preliminary injunction barring CPS from continuing to facilitate the "Quiet Time" program, or any other program involving the practice of "Transcendental Meditation," within or through any CPS school. Plaintiffs further request a permanent injunction barring CPS from facilitating the "Quiet Time" program, or any other program involving the practice of "Transcendental Meditation," within or through any CPS school at any point in the future.

92. Plaintiffs respectfully request a preliminary injunction barring the David Lynch Foundation from engaging in any further attempts to establish the "Quiet Time" program, or any other program involving the practice of "Transcendental Meditation," within or through any CPS school. Plaintiffs further request a permanent injunction barring the David Lynch Foundation from engaging in any attempts to establish the "Quiet Time" program, or any other program involving the practice of "Transcendental Meditation," within or through any CPS school at any point in the future.

93. Plaintiffs respectfully request a preliminary injunction barring the University of Chicago from conducting any research projects involving implementing the "Quiet Time" program, or any other program involving the practice of "Transcendental Meditation," within or through any CPS school. Plaintiffs further request a permanent injunction barring the University of Chicago from conducting any research projects involving implementing the "Quiet Time" program, or any other program involving the practice of "Transcendental Meditation," within or through any CPS school at any point in the future.

94. Plaintiffs respectfully request a declaratory judgment that facilitating, establishing, implementing, or reimplementing the "Quiet Time" program, or any other program involving the practice of "Transcendental Meditation," within or through any CPS school violates the United States Constitution. Plaintiffs further request a declaratory judgment that each named Defendant violated the constitutional rights of Plaintiffs through their collaborative efforts to facilitate the "Quiet Time" program within or through CPS schools, by pressuring former and current students to participate in the "Quiet Time" program against their wills, and by failing to adequately monitor and supervise the non-CPS certified "Transcendental Meditation" instructors running the "Quiet Time" program. Plaintiffs further request a declaratory judgment that each named Defendants' respective involvement in facilitating and implementing the "Quiet Time" program within or through CPS schools constituted a violation of the Illinois Religious Freedom Restoration Act.

95. Plaintiffs seek an order awarding them compensatory damages for the mental anguish and emotional distress suffered in connection with the constitutional deprivations suffered at the hands of the named Defendants. Alternatively, Plaintiffs seek an order awarding them nominal damages for violations of their constitutional rights.

96. Plaintiffs seek an order awarding them damages for violations of the Illinois Religious

Freedom Restoration Act.

97. Plaintiffs also request an order awarding them the costs of this action, including attorneys' fees and expenses, under 42 U.S.C. § 1988 and 775 ILCS 35/20.

98. Plaintiffs also request any other relief as the Court deems appropriate and just.

Dated: August 3, 2020  Respectfully submitted,

**SEPARATION OF HINDUISM FROM OUR SCHOOLS, CIVIL LIBERTIES FOR URBAN BELIEVERS, DASIA SKINNER, AMONTAE WILLIAMS, and DARRYL WILLIAMS**

John W. Mauck (#1797328)   By: s/ John W. Mauck
Terry S. Lu (#6313383)            One of their attorneys
**MAUCK & BAKER, LLC**
One North LaSalle Street, Suite 600
Chicago, Illinois 60602
Telephone: (312) 726-1243
Facsimile:  (866) 619-8661
jmauck@mauckbaker.com
tlu@mauckbaker.com