**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SEPARATION OF HINDUISM FROM OUR SCHOOLS, an unincorporated association; CIVIL LIBERTIES FOR URBAN BELIEVERS, an unincorporated association; AMONTAE WILLIAMS, individually and as a representative for all similarly situated persons; DASIA SKINNER, individually and as a representative for all similarly situated persons; and DARRYL WILLIAMS, individually and as a representative for all similarly situated persons, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 20-cv-04540 |
| CHICAGO PUBLIC SCHOOLS, City of Chicago School District #299; THE DAVID LYNCH FOUNDATION; and THE UNIVERSITY OF CHICAGO, | ) ) ) ) ) ) | The Honorable Judge Matthew F. Kennelly |
| Defendants. | ) ) | |

<u>**AMENDED CLASS ACTION COMPLAINT**</u>

NOW COME the Plaintiffs, SEPARATION OF HINDUISM FROM OUR SCHOOLS, an unincorporated association, CIVIL LIBERTIES FOR URBAN BELIEVERS, an unincorporated association, AMONTAE WILLIAMS, individually and as a representative for all similarly situated persons, DASIA SKINNER, individually and as a representative for all similarly situated persons, and DARRYL WILLIAMS, individually and as a representative for all similarly situated persons (collectively "Plaintiffs"), by and through their attorneys, MAUCK & BAKER, LLC, and hereby complain of Defendants CHICAGO PUBLIC SCHOOLS, THE

DAVID LYNCH FOUNDATION, and THE UNIVERSITY OF CHICAGO (collectively "Defendants"), as follows:

## INTRODUCTION

1.  Plaintiffs seek redress under 42 U.S.C. § 1983 for deprivations of their constitutional rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs also seek redress for violations of the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1, et seq.

2.  Defendants violated the Establishment and Free Exercise Clauses of the First Amendment to the United States Constitution when they collaborated to implement and facilitate the "Quiet Time" program within eight known CPS schools.

3.  Although all named Defendants have made statements to the contrary, the "Quiet Time" program is based in Hindu beliefs and the practice of "Transcendental Meditation" is fundamentally religious in nature.

4.  Plaintiffs' rights under the First Amendment were violated when Defendants created environments within public schools where Hindu beliefs and the practice of "Transcendental Meditation" were being endorsed and students were coerced to engage in religious practices against their wills, teachers were directed to participate in the coercion as part of their employment with CPS, and the coercion interfered with the rights of parents and legal guardians to direct the religious education of their CPS-student children.

5.  Defendants, by collaborating to implement and facilitate the "Quiet Time" program within certain CPS schools, also violated the Illinois Religious Freedom Restoration Act by substantially burdening the religious free exercise rights of CPS students, CPS teachers, and the parents and legal guardians of CPS students.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343.

7.   This Court has supplemental jurisdiction over the substantially related state law matters under 28 U.S.C. § 1367(a).

8.   The Court has the authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and injunctive relief under Federal Rules of Civil Procedure 7 and 65.

9.   Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to these claims occurred within the Northern District of Illinois.

## PARTIES

10. Plaintiff Separation of Hinduism from our Schools is an unincorporated association of parents, students, and others who want to remove Hindu-based religious practices, concealed as "Transcendental Meditation," from our public schools.

11. Plaintiff Civil Liberties for Urban Believers ("CLUB") is an unincorporated association of churches and ministries located in Chicago, Illinois. CLUB seeks to protect religious civil liberties particularly relating to the First Amendment's Free Exercise and Establishment Clauses. It is organized and directed by the Holy Spirit. Plaintiff CLUB has prepared a declaration that is attached and incorporated by reference as **Exhibit A**.

12. Plaintiff Amontae Williams is a former CPS student who graduated from a CPS school that hosted the "Quiet Time" program. Prior to his graduation, he participated in the "Quiet Time" program implemented at his CPS school.

13. Plaintiff Dasia Skinner is a substitute teacher who accepted assignments to teach students at two CPS schools that both hosted the "Quiet Time" program. On occasion, during class

time, students were escorted out of her classes by certified "Transcendental Meditation" instructors for the purpose of participating in extra CPS meditation sessions.

14. Plaintiff Darryl Williams is a parent of Plaintiff Amontae Williams, a former CPS student.

15. Defendant Chicago Public Schools ("CPS"), officially classified as City of Chicago School District #299, is the fourth largest school district in the United States. CPS recently reported overseeing 652 schools, including 477 elementary schools and 165 high schools. CPS claims an enrollment of over 355,000 students. CPS schools are funded in part through local property taxes.

16. Defendant David Lynch Foundation ("DLF") is an Iowa not-for-profit corporation headquartered in New York City and registered to do business in Illinois and a 501(c)(3) organization with a stated mission of "promoting widespread implementation of the . . . Transcendental Meditation ("TM") program" with a specific focus on "inner-city students." About DLF, https://www.davidlynchfoundation.org/about-us.html (last visited Jul. 20, 2020), **Exhibit G**. DLF's program targeting implementation within urban schools is known as "Quiet Time" ("QT"). On its website, DLF states that it has successfully aided the implementation of the Quiet Time program in "hundreds of public, private and charter schools worldwide" and the organization solicits donations to pursue its intention to "expand the Quiet Time program in the U.S. and around the world." Quiet Time with Transcendental Meditation in Schools, https://www.davidlynchfoundation.org/schools.html (last visited Jul. 20, 2020), **Exhibit H**. On its website, DLF also identifies Chicago as one of four locations where the organization is particularly interested "to expand the network of schools with Quiet Time programs." Funding Guidelines Underserved Schools, https://www.davidlynchfoundation.org/funding-guidelines-underserved-schools.html (last visited Jul. 20, 2020), **Exhibit I**.

17. Defendant University of Chicago, an Illinois not-for-profit corporation, acting through the Crime and Education Labs of the University of Chicago Urban Labs, worked collaboratively with Defendants CPS and the David Lynch Foundation to plan and conduct a research project designed to implement the "Quiet Time" program within multiple CPS schools. The University of Chicago Urban Labs is a group of five research laboratories working "to address challenges across five key dimensions of urban life: crime, education, health, poverty, and energy & environment." Defendant Urban Labs "partner[s] with civic and community leaders to identify, test, and help scale the programs and policies with the greatest potential to improve human lives."

18. Although CPS is a governmental entity and, upon information and belief, the David Lynch Foundation and the University of Chicago are private entities, all defendants acting in concert were acting under color of law during the time periods relevant to this action. Dennis v. Sparks, 449 U.S. 24, 27–28 (1980)

## COMMON ALLEGATIONS

19. "Transcendental Meditation" is a specific type of silent meditation, involving the use of mantras, that was developed by Maharishi Mahesh Yogi in India in the 1950s.

20. Proponents of "Transcendental Meditation" claim that the technique can help students to improve academic performance and reduce stress and violence.

21. Upon information and belief, the David Lynch Foundation approached the University of Chicago Urban Labs with a proposal to run a research



**TM Founder Maharishi Mahesh Yogi in Huntsville in January 1978** *(Jdontfight / CC BY-SA (https://creativecommons.org/licens es/by-sa/3.0))*

project involving running the "Quiet Time" program within certain CPS schools.

22. Upon information and belief, the University of Chicago Urban Labs agreed to run the proposed research project and was involved in jointly approaching CPS with the project proposal.

23. Upon information and belief, CPS, the University of Chicago Urban Labs, and the David Lynch Foundation worked collaboratively to establish parameters for the "Quiet Time" program within CPS schools.

24. Upon information and belief, CPS, the University of Chicago Urban Labs, and the David Lynch Foundation worked collaboratively to implement the "Quiet Time" program within CPS schools.

25. The "Quiet Time" program took place during regular school hours and utilized space located on school property which was specifically designated for the use of the program.

26. The "Quiet Time" program was designed to provide instruction in—and to facilitate the practice of—"Transcendental Meditation" by CPS students.

### *"Puja" Initiation Ceremony*

27. The practice of "Transcendental Meditation" requires participation in an initiation ceremony, also known as a "Puja."

28. "Puja" initiation ceremonies must be led by "Transcendental Meditation" instructors, who are certified by the Maharishi Foundation USA, a 501(c)(3) founded by Maharishi Mahesh Yogi.

29. During a "Puja" initiation ceremony, various bowls, food items, and symbolic items are arranged around a picture of Guru Dev, a former teacher of Maharishi Mahesh Yogi, the founder of Transcendental Meditation."

30. During a "Puja" initiation ceremony, specific items are presented to the picture of Guru Dev while the "Transcendental Meditation" instructor performs a chant in Sanskrit, which is also accompanied by certain rehearsed movements.

31. At CPS schools, "Puja" initiation ceremonies involving either individual or small groups of students were performed in private by the certified "Transcendental Meditation" instructors.

32. CPS students were asked to actively participate in the "Puja" by bringing certain items to be presented to the image of Guru Dev.



"Puja" shrine constructed around an image of Guru Dev

33. The certified "Transcendental Meditation" instructors did not identify the person appearing in the photograph displayed on the table.

34. The certified "Transcendental Meditation" instructors did not explain the significance of presenting various items to the photograph displayed on the table.

35. CPS students were asked to remain present while the certified "Transcendental Meditation" instructor performed a ritual involving the chanting of Sanskrit words coordinated

with certain rehearsed movements.

36. The certified "Transcendental Meditation" instructors did not explain the meaning behind the Sanskrit words they were chanting during the "Puja" initiation ceremony.

37. When translated into English, the Sanskrit words chanted during the "Puja" initiation ceremony contain, among other things, statements recognizing the power possessed by various Hindu deities and invitations to those same Hindu deities to channel their powers through those in attendance at the "Puja" initiation ceremony.

38. Proponents of "Transcendental Meditation" consider the "Puja" initiation ceremony critical to the practice of "Transcendental Meditation," because the "Puja" establishes the necessary connection between a practitioner and the entities that ultimately make the technique effective.

39. Every CPS student that participated in the "Quiet Time" program was asked to participate in a "Puja" initiation ceremony.

40. Each "Puja" initiation ceremony was led by a certified "Transcendental Meditation" instructor, during regular school hours, in a space located on school grounds but set aside for the exclusive use of the "Quiet Time" program.

41. The certified "Transcendental Meditation" instructors took steps to ensure that the spaces used for "Puja" initiation ceremonies remained private, by keeping doors closed, turning off the lights during the "Puja," and covering windows to block any outside view into the rooms.

### *Mantras*

42. The practice of "Transcendental Meditation" involves silent meditation, with encouragement to utilize an assigned mantra to assist in the meditative process.

43. During meditation, "Transcendental Meditation" practitioners are taught to silently

repeat their mantras.

44. Certified "Transcendental Meditation" instructors told CPS students that mantras are "meaningless sounds."

45. CPS students were also told that they should only utilize a mantra that has been uniquely assigned to them by a certified "Transcendental Meditation" instructor.

| | | | | |
|---|---|---|---|---|
| ॐ | श्रीं | ह्रीं | क्रीं | हूं |
| Om | Shrim | Hrim | Krim | Hum |
| ऐं | फट् | क्रों | स्वाहा | क्लीं |
| Aim | Phat | Krom | Svaha | Klim |
| हुं | ह्रौं | द्रीं | स्फें | प्लें |
| Hum | Hraum | Drim | Sphem | Plrem |
| क्लीं स्वाहा | ठः | प्रीं | ठं ठं ठः ठः | स्फीं |
| Klrim Svaha | Thah | Prim | Tham Tham Thah Thah | Sphim |
| ह्रूं | हुं | हस्ख्फ्रें | गं | ब्लूं |
| Hrum | Hrum | Hskphrem | Gam | Blum |

**Chart of Common TM Mantras**

46. During their respective "Puja" initiation ceremony, the CPS students were taught how to pronounce their assigned mantra, but were not given the meaning or significance behind the Sanskrit words themselves.

47. Mantras are drawn from a select pool of Sanskrit words that honor or reference specific Hindu deities.

48. For example, the "Aim" mantra is associated with the deity Saraswati, who is the Hindu goddess of knowledge, music, art, wisdom, and learning.

49. Every CPS student that participated in the "Quiet Time" program was assigned a mantra and instructed to silently repeat it whenever engaged in CPS meditation sessions.

*Secretive Nature*

50. The practice of "Transcendental Meditation" involves an oath to secrecy.

51. "Transcendental Meditation" practitioners are warned to not discuss any details of what they heard, saw, or experienced during the "Puja" initiation ceremony.

52. "Transcendental Meditation" practitioners are warned to not reveal their mantras to

others.

53. "Transcendental Meditation" practitioners are warned to not recount to others any of their private interactions with certified "Transcendental Meditation" instructors.

54. Every CPS student that participated in the "Quiet Time" program was instructed to keep their experiences with respect to the program secret from others, including their parents, legal guardians, other students, and their friends.



55. "Quiet Time" participants were further warned that failing to keep the oath to secrecy would render the practice of "Transcendental Meditation" wholly ineffective.

### *CPS Meditation Sessions*

56. The "Quiet Time" program involved requiring CPS students to engage in two 15-minute meditation sessions, one in the morning and one in the afternoon of every school day.

57. During each CPS meditation session, students were instructed to be silent.

58. Each CPS meditation session was preferentially led by a certified "Transcendental Meditation" instructor.

59. Whenever a certified "Transcendental Meditation" instructor was not available for a particular classroom during a scheduled meditation session, the CPS teacher assigned to that classroom was expected to lead the meditation session as part of their employment with CPS.

60. A small handheld bell, also known as a "Ghanta" or ritual bell commonly used in

Hinduistic religious practices, was rung by the certified "Transcendental Meditation" instructor or assigned CPS teacher to indicate the beginning of each CPS meditation session.

61. In the Hindu belief system, bells are often used to indicate a desire to interact with a deity and to prepare a listener's mind for said interaction.

62. CPS, the University of Chicago Urban Labs, and the David Lynch Foundation all made representations, either directly or indirectly, to students, parents, legal guardians, and staff that the "Quiet Time" program and "Transcendental Meditation" are non-religious in nature.

63. By failing to disclose the religious nature of the "Quiet Time" program, students, parents, and legal guardians were not given a fair opportunity to decide whether to opt out of participation in the program. Declarations discussing the hidden religious nature of "Transcendental Meditation," and the "Quiet Time" program by extension, are attached and incorporated by reference as **Exhibits E & F**.

64. The lack of transparency within the "Quiet Time" program created conditions under which interference with the rights of parents and legal guardians to direct the religious education of their CPS-student children could occur.

## ALLEGATIONS AS TO AMONTAE WILLIAMS

65. Plaintiff Amontae Williams has prepared a declaration that is attached and incorporated by reference as **Exhibit B**.

66. Plaintiff was a former CPS student attending Bogan Computer Technical High School ("Bogan") as a junior and a senior, until graduating in the spring of 2019.

67. Plaintiff regularly attended a Christian church with his family and was raised within the Christian faith.

68. While attending Bogan, Plaintiff first encountered the "Quiet Time" program, which

was being run at the school.

69. Plaintiff discussed with his classmates the collective pressure they felt from CPS administrators, CPS teachers, and the certified "Transcendental Meditation" instructors to participate in the "Quiet Time" program.

70. Plaintiff discussed with his classmates the collective discomfort they felt in participating in the "Quiet Time" program and their desire to discontinue their participation.

71. Plaintiff learned of the hidden religious nature of the "Quiet Time" program and shared that information with other CPS students, but he was reprimanded in the form of being sent to the principal's office on two occasions.

72. During his first trip to the principal's office, Plaintiff was warned by Sharon Dixon, Bogan's Operations and Climate and Culture Manager, to stop sharing with other CPS students about how the "Quiet Time" program involves religious practices and rituals based in Hinduism.

73. During his second trip to the principal's office, Sharon Dixon threatened Plaintiff with suspension for continuing to tell other CPS students about the concealed connections between "Quiet Time" and Hinduism.

74. While participating in a CPS meditation session, Plaintiff had a traumatic experience that felt to him like exposure to negative spiritual influences, contrary to his religious upbringing.

75. Plaintiff was repeatedly rebuffed when he asked certified "Transcendental Meditation" instructors to explain what was happening during the "Puja" initiation ceremony, the meaning behind his assigned mantra, and the religious and/or spiritual significance of the scheduled CPS meditation sessions.

76. The above described conduct demonstrates how Plaintiff was coerced, as a CPS student, to engage in religious practices and rituals that are based in Hinduism, in violation of his rights

under both the Establishment and Free Exercise Clauses.

## ALLEGATIONS AS TO DASIA SKINNER

77. Plaintiff Dasia Skinner has prepared a declaration that is attached and incorporated by reference as **Exhibit C**.

78. Plaintiff was a CPS substitute teacher who accepted assignments to work at Bogan Computer Technical High School and Gage Park High School in 2018 and 2019, during periods while the two schools were actively facilitating the "Quiet Time" program.

79. Plaintiff is an active participant within a Christian church and strongly identifies with the Christian faith.

80. By virtue of her position as a CPS employee and authority figure to CPS students entrusted to her care and instruction, Plaintiff felt pressured by CPS administrators to support the "Quiet Time" program and to encourage CPS students to participate.

81. Plaintiff was also pressured to evaluate students based upon their participation in the "Quiet Time" program.

82. After speaking with a number of students, multiple certified "Transcendental Meditation" instructors, and conducting her own investigation into the foundations of "Transcendental Meditation," Plaintiff confirmed that "Transcendental Meditation" is built upon religious practices and rituals that are based in Hinduism.

83. Plaintiff's personal faith and religious practices are inconsistent with the practices and beliefs associated with Hinduism.

84. The above described conduct demonstrates how Plaintiff was coerced, as a CPS teacher, to facilitate religious practices and rituals that are based in Hinduism, in violation of her rights under both the Establishment and Free Exercise Clauses.

## ALLEGATIONS AS TO DARRYL WILLIAMS

85. Plaintiff Darryl Williams has prepared a declaration that is attached and incorporated by reference as **Exhibit D**.

86. Plaintiff is a parent of a former CPS student who felt pressured to participate in the "Quiet Time" program at a CPS school.

87. Plaintiff is an active participant within a Christian church and strongly identifies with the Christian faith.

88. As a parent, Plaintiff has gone to great lengths to direct the religious education of his children.

89. When Plaintiff enrolled his children into CPS schools, Plaintiff did not anticipate that CPS, as a secular and governmental entity, would interfere in the religious education of his children.

90. When Plaintiff first learned of the existence of the "Quiet Time" program and its connection to practices and beliefs based in Hinduism, long after the program was first instituted within CPS schools, Plaintiff was angered by the intrusion into his child's religious education and coercion toward a belief system that is inconsistent with his personal faith and the religious practices of his family.

91. As a taxpayer, Plaintiff was also angered by the use of public funds and resources to create environments within public schools where Hindu beliefs and the practice of "Transcendental Meditation" were being endorsed by Defendant CPS.

92. The above described conduct demonstrates how Defendants, by facilitating religious practices and rituals that are based in Hinduism, interfered with Plaintiff's parental right to direct the religious education of his CPS-student child, in violation of Plaintiff's rights under both the Establishment and Free Exercise Clauses.

## CLASS ACTION ALLEGATIONS

93. Plaintiffs bring all claims herein as class claims pursuant to Federal Rule of Civil Procedure 23. The requirements of Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) are met with respect to the class defined below.

### A. Class Definition(s)

94. The (b)(2) Injunctive and Declaratory Relief Class consists of:

> All persons who are CPS students, CPS teachers, parents or legal guardians of CPS students directly associated with any CPS school facilitating the "Quiet Time" program, or any other program involving the practice of "Transcendental Meditation."

95. The Three (b)(3) Sub-Classes consist of:

> All students who attended a CPS school during a period when the school facilitated the "Quiet Time" program.

> All teachers at CPS schools who were required to accommodate, endorse, facilitate, or enable the "Quiet Time" program at a CPS school where they were employed at the time.

> All parents and legal guardians of students who attended a CPS school during a period when the school facilitated the "Quiet Time" program.

96. Plaintiffs reserve the right to amend the above Class and Sub-Class definitions if further investigation and discovery indicates that the Class and Sub-Class definitions should be narrowed, expanded, or otherwise modified. Excluded from the Class and Sub-Classes are Defendants, any of their subsidiaries, affiliates, officers, directors, and members of such persons immediate families; also excluded are the presiding judge in this action and the judges' immediate family.

97. Defendants' collaboration in implementing and facilitating the "Quiet Time" program within certain CPS schools uniformly applied to all Class and Sub-Class members, so that common questions of law and fact predominate as to all members of the Class and Sub-Classes.

98. Plaintiffs believe that the potential number of Class and Sub-Class members exceeds

1,000 per year across the eight known CPS schools that hosted the "Quiet Time" program for one or more school years.

99.     Questions of law and fact common to the Class and Sub-Classes include, among others, the following:

a.   Whether the practice of "Transcendental Meditation," and the "Quiet Time" program by extension, is fundamentally religious in nature;

b.   Whether Defendants concealed from students, teachers, parents, and legal guardians, the "Quiet Time" program's connection to practices and beliefs that are based in Hinduism;

c.   Whether all Defendants were acting under color of law based upon their respective roles in implementing and facilitating the "Quiet Time" program within CPS schools;

d.   Whether Defendants have acted or refused to act on grounds generally applicable to the Class and Sub-Classes; and

e.   Whether Plaintiffs and other members of the Sub-Classes have been damaged, and if so, what is the proper measure of such damages?

100.    The claims asserted by Plaintiffs are typical of the claims of the members of the Class and Sub-Classes, as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class and Sub-Classes is common to the members of each.

101.    The Class and Sub-Classes are manageable because Defendant CPS keeps records on each student, teacher, parent, and legal guardian. Identifying Class and Sub-Class members will therefore be manageable.

102.    The Plaintiffs will fairly and adequately represent and protect the interests of the Class and each Sub-Class, and do not have interests adverse to the Class and Sub-Classes.

103.    Plaintiffs and their counsel can fairly and adequately represent the Class and Sub-

Classes.

104.     Allowing the prosecution of these claims as separate actions would create the risk of establishment of incompatible standards of conduct being imposed on Defendants; would risk needlessly duplicative results and protracted proceedings; is inconsistent with the portion of the Class claim that seeks injunctive or declaratory relief; and is inappropriate because common questions of law or fact predominate over questions affecting only individual members of the Class and Sub-Classes.

**COUNT I**
VIOLATION OF THE ESTABLISHMENT AND FREE EXERCISE CLAUSES
(First Amendment)
(All Defendants)

105.     Plaintiffs incorporate Paragraphs 1–104 as if fully restated here.

106.     The Establishment and Free Exercise Clauses of the First Amendment to the United States Constitution provide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." These prohibitions apply equally to the official acts of local governmental entities, including the Chicago Public Schools and its officers and employees, through the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

107.     The Chicago Public Schools' practice of facilitating the "Quiet Time" program within certain CPS schools violates the Establishment and Free Exercise Clauses for all the reasons that follow.

108.     CPS' practice coerces students and others to engage in religious practices and rituals that are based in Hinduism, and thus violates both the Establishment Clause and the Free Exercise rights of the students and teachers.

109.     CPS' practice communicates a message that the District endorses and favors the

Hindu belief system and the practice of "Transcendental Meditation."

110.    CPS' practice excessively entangles the government with religion, and leads to religious divisiveness in CPS schools and within the community.

111.    CPS' practice causes taxpayer funds to support the practice of "Transcendental Meditation" and the propagation of the religious views specific to "Transcendental Meditation."

112.    CPS also violated the Establishment and Free Exercise Clauses by making participation in the "Quiet Time" program effectively mandatory for all students and teachers at certain CPS schools.

113.    CPS students and teachers were told by school officials that all students must participate in the "Quiet Time" program.

114.    Students who did not want to participate in the "Quiet Time" program were warned that their failure to participate could impact their grades and disqualify them from participating in their respective graduation ceremonies.

115.    Certified "Transcendental Meditation" instructors were presented to students as authority figures, and permitted to interact with students in private, without adequate oversight from CPS employees.

116.    Certified "Transcendental Meditation" instructors repeatedly pressured students to participate in the "Quiet Time" program.

117.    Certified "Transcendental Meditation" instructors targeted certain students, due to their popularity with peers, for the purpose of trying to influence other students to participate in the "Quiet Time" program.

118.    Certified "Transcendental Meditation" instructors offered incentives to students in exchange for participation in the "Quiet Time" program, in the form of food, money, and other

special privileges.

119.    These actions undertaken by the certified "Transcendental Meditation" instructors had the cumulative effect of creating an environment that pressured students to engage in religious practices against their wills.

120.    By violating the Establishment and Free Exercise Clauses as set forth above, CPS has injured Plaintiffs, the Class, and the respective Sub-Classes, and threatens continued or future injury to Plaintiffs, the Class, and the respective Sub-Classes.

121.    By violating the Establishment and Free Exercise Clauses as set forth above, CPS has, under color of statutes, ordinances, regulations, policies, custom, or usage, deprived or threatened to deprive Plaintiffs of rights secured by the First and Fourteenth Amendments to the United States Constitution, entitling them to a remedy under 42 U.S.C. § 1983.

122.    By collaborating with CPS to implement the "Quiet Time" program within CPS schools, the David Lynch Foundation and the University of Chicago jointly participated in the constitutional deprivation against Plaintiffs.

123.    Implementation of the "Quiet Time" program within CPS schools has caused Plaintiffs, members of the Class, and members of the respective Sub-Classes to experience anger and anxiety over personal salvation. The program has pressured and coerced students and teachers to engage in religious practices that are contrary to their personal beliefs and the religious instruction provided by parents, legal guardians, and their respective faith communities.

**COUNT II**
VIOLATION OF ILLINOIS RELIGIOUS FREEDOM RESTORATION ACT
(775 ILCS 35/1, et seq.)
(All Defendants)

124.    Plaintiffs incorporate Paragraphs 1–123 as if fully restated here.

125.    Under the Illinois Religious Freedom Restoration Act, the "[g]overnment should not

substantially burden the exercise of religion without compelling justification." 775 ILCS 35/10(a)(3).

126.    The joint actions of Defendants have substantially burdened the religious exercise rights of CPS students, CPS teachers, and the parents and legal guardians of CPS students.

127.    The implementation and facilitation of the "Quiet Time" program within CPS schools was neither in furtherance of a compelling governmental interest nor the least restrictive means of furthering a compelling governmental interest.

## JURY DEMAND

128.    Plaintiffs demand a trial by jury on all the issues so triable.

## RELIEF REQUESTED

129.    Plaintiffs incorporate Paragraphs 1–128 as if fully restated here.

130.    Plaintiffs and the members of the Class and Sub-Classes respectfully request that the Court certify this action as a Class action under Federal Rules of Civil Procedure 23(b)(2) and (b)(3).

131.    Plaintiffs and the Class respectfully request a declaratory judgment that the practice of "Transcendental Meditation," and the "Quiet Time" program by extension, is fundamentally religious in nature.

132.    Plaintiffs and the Class respectfully request a preliminary injunction barring CPS from continuing to facilitate the "Quiet Time" program or any other program involving the practice of "Transcendental Meditation," within or through any CPS school, either in-person or virtually. Plaintiffs further request a permanent injunction barring CPS from facilitating the "Quiet Time" program, or any other program involving the practice of "Transcendental Meditation," within or through any CPS school at any point in the future, either in-person or virtually.

133.    Plaintiffs and the Class respectfully request a preliminary injunction barring the David Lynch Foundation from engaging in any further attempts to establish the "Quiet Time" program or any other program involving the practice of "Transcendental Meditation," within or through any CPS school, either in-person or virtually. Plaintiffs further request a permanent injunction barring the David Lynch Foundation from engaging in any attempts to establish the "Quiet Time" program, or any other program involving the practice of "Transcendental Meditation," within or through any CPS school at any point in the future, either in-person or virtually.

134.    Plaintiffs and the Class respectfully request a preliminary injunction barring the University of Chicago from conducting any research projects involving implementing the "Quiet Time" program or any other program involving the practice of "Transcendental Meditation," within or through any CPS school, either in-person or virtually. Plaintiffs further request a permanent injunction barring the University of Chicago from conducting any research projects involving implementing the "Quiet Time" program, or any other program involving the practice of "Transcendental Meditation," within or through any CPS school at any point in the future, either in-person or virtually.

135.    Plaintiffs and the Class respectfully request a declaratory judgment that facilitating, establishing, implementing, or reimplementing the "Quiet Time" program, or any other program involving the practice of "Transcendental Meditation," within or through any CPS school, either in-person or virtually, violates the United States Constitution. Plaintiffs further request a declaratory judgment that each named Defendant violated the constitutional rights of Plaintiffs through their collaborative efforts to facilitate the "Quiet Time" program within or through CPS schools, by pressuring students and teachers to participate in the "Quiet Time" program against their wills, and

by failing to adequately monitor and supervise the non-CPS certified "Transcendental Meditation" instructors running the "Quiet Time" program. Plaintiffs further request a declaratory judgment that each named Defendants' respective involvement in facilitating and implementing the "Quiet Time" program within or through CPS schools constituted a violation of the Illinois Religious Freedom Restoration Act.

136.    Plaintiffs and their respective Sub-Classes seek an order awarding them compensatory damages for the mental anguish and emotional distress suffered in connection with the constitutional deprivations suffered at the hands of the named Defendants. Alternatively, Plaintiffs and their respective Sub-Classes seek an order awarding them nominal damages for violations of their constitutional rights.

137.    Plaintiffs and their respective Sub-Classes seek an order awarding them damages for violations of the Illinois Religious Freedom Restoration Act.

138.    Plaintiffs and their respective Sub-Classes also seek an order awarding them punitive damages against Defendants The David Lynch Foundation and The University of Chicago.

139.    Plaintiffs also request an order awarding them the costs of this action, including attorneys' fees and expenses, under 42 U.S.C. § 1988 and 775 ILCS 35/20.

140.    Plaintiffs, the Class, and the Sub-Classes also request any other relief as the Court deems appropriate and just.

Dated: September 14, 2020                    Respectfully submitted,

                                             **SEPARATION OF HINDUISM FROM OUR SCHOOLS, CIVIL LIBERTIES FOR URBAN BELIEVERS, AMONTAE WILLIAMS, DASIA SKINNER, and DARRYL WILLIAMS**

John W. Mauck (#1797328)                    By: s/ John W. Mauck
Terry S. Lu (#6313383)                          One of their attorneys
**MAUCK & BAKER, LLC**
One North LaSalle Street, Suite 600
Chicago, Illinois 60602
Telephone: (312) 726-1243
Facsimile:   (866) 619-8661

*D:\M&B\3845 Transcendental Meditation\Pleadings\20200911_Class Action Complaint_final.docx*