**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **SEPARATION OF HINDUISM FROM OUR SCHOOLS, an unincorporated association; CIVIL LIBERTIES FOR URBAN BELIEVERS, an unincorporated association; AMONTAE WILLIAMS, individually and as a representative for all similarly situated persons; DASIA SKINNER, individually and as a representative for all similarly situated persons; and DARRYL WILLIAMS, individually and as a representative for all similarly situated persons,** ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** ) | **Case No. 20 C 4540** |
| ) | |
| **vs.** ) | |
| ) | |
| **CHICAGO PUBLIC SCHOOLS, City of Chicago School District #299; THE DAVID LYNCH FOUNDATION; and the UNIVERSITY OF CHICAGO,** ) ) ) ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

On May 21, 2021, the Court granted the defendants' motion to dismiss the plaintiffs' amended complaint in part. *See generally Separation of Hinduism From Our Schs. v. Chicago Pub. Schs., City of Chicago Sch. Dist. #299*, No. 20 C 4540, 2021 WL 2036536, at *1 (N.D. Ill. May 21, 2021). The plaintiffs now seek leave to amend and have submitted a proposed second amended complaint in an effort to cure the deficiencies in the first amended complaint.

**Discussion**[1]

Federal Rule of Civil Procedure 15(a) "directs courts to freely give leave to amend when justice so requires." *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021) (alterations accepted) (internal quotation marks omitted). But leave to amend is not guaranteed. *See id.* "[C]ourts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008).

Delay is not a legitimate basis for denial of leave to amend in this case; plaintiffs acted promptly after the Court dismissed the previous version of their complaint. The real question is futility. An amendment is futile "only if it appears to a certainty that [the] plaintiff cannot state a claim." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004); *see also Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) ("[F]utile repleadings include restating the same facts using different language, reasserting claims previously determined, failing to state a valid theory of liability, and the inability to survive a motion to dismiss." (citations omitted)).

As with the previous version of the complaint, the defendants argue that the plaintiffs other than Amontae Williams lack standing and that the repleaded versions of previously dismissed claims fail to state a claim upon which relief may granted. On the latter point, a complaint "must (1) describe the claim in sufficient detail to give the defendant fair notice of the claim and [the] grounds on which it rests and (2) contain

---

[1] The factual background was summarized in the Court's prior opinion. *See Separation of Hinduism From Our Schs.*, 2021 WL 2036536, at *1–4. The Court assumes familiarity with those facts and will not repeat them here.

2

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019) (citation omitted) (internal quotation marks omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (internal quotation marks omitted). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## A.    Skinner's standing

In the prior opinion, the Court concluded that Dasia Skinner lacked standing to sue because she did not allege an injury in fact under either the Free Exercise Clause or the Establishment Clause. *See Separation of Hinduism From Our Schs.*, 2021 WL 2036536, at *10. Missing from the prior complaint were any allegations that Skinner had "direct involvement" in the Quiet Time program or "any description of how her mere proximity to students participating in Quiet Time would have inhibited her religious beliefs." *Id.*

The proposed second amended complaint does not cure these deficiencies. *See* 2d Amd. Compl. ¶¶ 84–120. Regarding her Establishment Clause claim, she still does not allege that she actually participated in the Quiet Time program. *See Separation of Hinduism From Our Schs.*, 2021 WL 2036536, at *10. As with the prior complaint, almost everything Skinner alleges about the Quiet Time program—how it was

conducted, students' experiences, and parents' reactions—comes secondhand from her conversations with students, parents, and Quiet Time instructors.  *See id*.

Though the plaintiffs argue in their brief that Skinner facilitated the Quiet Time program when she led sessions, their complaint does not allege that.  *See* Pl.'s Reply Br. at 5–6.  The complaint only alleges that Skinner *felt pressure* to "support the 'Quiet Time' program," "encourage CPS students to participate," "evaluate students," and "follow the schedule and facilitate . . . meditation sessions," not that she succumbed to that pressure.  2d Amd. Compl. ¶¶ 87, 88, 91, 92.  Skinner also alleges that she was told by a staff member "that she was expected to make sure that the students were doing the program."  *Id.* ¶ 89.  Declaring one "felt pressure" or was "expected" to participate in an activity is not the same as alleging that one participated in the activity.[2] Skinner cites no authority to support the proposition that being on the receiving end of unsuccessful exhortations to an adult to participate in a religious activity amounts to an injury that gives rise to standing under Article III.

Skinner still fails to identify what personal injury she suffered "*as a consequence* of the alleged constitutional error."  *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982); *see also Separation of Hinduism From Our Schs.*, 2021 WL 2036536, at *10.  The complaint states that Skinner addressed her concerns about the Quiet Time program with various administrators, with a local school council, and with the Board of Education of the City of Chicago.  2nd Amd. Compl. ¶¶ 97–105.  Skinner alleges that after she raised her

---

[2] The plaintiffs presumably know the difference because in both their amended complaint and in their proposed second amended complaint, they allege that Amontae Williams was coerced to participate *and* actually participated in Quiet Time.

concerns, she was "blocked from receiving or accepting work" within CPS while she was under investigation. *Id.* ¶¶ 106–115. Skinner never learned the purpose of investigation. *Id.* ¶ 110.

To the extent the investigation and Skinner's lockout were injuries, they were injuries that resulted from her decision to publicly share her concerns about Quiet Time, not injuries that resulted from her participation in Quiet Time. The plaintiffs' proposed second amended complaint makes that clear. The plaintiffs' allege that "[p]rior to voicing her concerns about the religious elements" of Transcendental Meditation and Quiet Time, Skinner "had not had any difficulty receiving or accepting assignments" and "had not been placed under investigation." *Id.* ¶¶ 116–117. Thus, these alleged injuries are not related to any of Skinner's claims in this case and are not the direct consequences of the alleged unconstitutional error at the heart of those claims—the purported religious components of the Quiet Time program.[3]

From Skinner's remaining allegations, one can at most infer that she was injured by observing conduct that she objected to. But the intensity of Skinner's interest in upholding the Establishment Clause "is not a permissible substitute for the showing of injury itself." *See Valley Forge Christian Coll.*, 454 U.S. at 485. Abstract injuries stemming from the nonobservance of the Constitution by others is not a "species of injury in fact" under the Establishment Clause. *See Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 808 (7th Cir. 2011) (internal quotation marks omitted).

---

[3] Given this conclusion, the Court need not consider the Board's arguments regarding municipal liability under *Monell v. Department of Social Services. of City of New York*, 436 U.S. 658 (1978). The Court notes that Skinner does not attempt to support her claims on the basis that she was retaliated against for exercising her right to free speech on a matter of public concern.

Regarding her Free Exercise claim, Skinner still has not explained how her religious beliefs were violated—a necessary component for standing.  *See Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 225 n.9 (1963) ("[T]he requirements for standing to challenge state action under the Establishment Clause, unlike those relating to the Free Exercise Clause, do not include proof that particular religious freedoms are infringed.").  The proposed second amended complaint is devoid of any explanation of how Skinner's "mere proximity to students participating in Quiet Time would have inhibited her religious beliefs."  *See Separation of Hinduism From Our Schs.*, 2021 WL 2036536, at *10.

Finally, Skinner does not have standing to bring a claim under the Illinois Religious Freedom Restoration Act (IRFRA).  IRFRA creates a right of action against a government, subdivision, or government official that "substantially burden[s] a person's exercise of religion."  *See* 775 ILCS 35/15.  Because Skinner has not alleged that she was presented with "a coercive choice of either abandoning [her] religious convictions" or participating in the allegedly unconstitutional conduct," she has not alleged an injury sufficient to confer standing under IRFRA.[4]  *See Diggs v. Snyder*, 333 Ill. App. 3d 189, 194, 775 N.E.2d 40, 44 (2002) (citing *Wisconsin v. Yoder*, 406 U.S. 217–18 (1972)); *Students & Parents for Priv. v. Sch. Dirs. of Twp. High Sch. Dist. 211*, 377 F. Supp. 3d 891, 905 (N.D. Ill. 2019).

In sum, Skinner's allegations in the proposed second amended complaint are insufficient to confer standing.  The Board's argument regarding Skinner's eligibility as a

---

[4] Because Skinner does not have standing to bring her IRFRA claim, the Court does not consider the parties' statute of limitations arguments.

class representative is therefore moot.

**B.    Darryl Williams's taxpayer standing**

In its prior opinion, the Court concluded that Darryl Williams was not eligible for either federal, state, or municipal taxpayer standing. *Separation of Hinduism From Our Schs.*, 2021 WL 2036536, at *8–10. In the proposed second amended complaint, the plaintiffs reassert that Darryl has taxpayer standing. But—despite the Court's clear directional signals—the new version of the complaint contains the same deficiencies as the previous one.

As before, the complaint does not state which form of taxpayer standing the plaintiffs believe Darryl is eligible for, so the Court considers all three. Darryl is still not challenging a federal appropriation or a state appropriation, so he does not meet the requirements for either federal or state taxpayer standing. *See Laskowski v. Spellings*, 546 F.3d 822, 826 (7th Cir. 2008) (Federal taxpayer standing only exists "when a taxpayer challenges a specific congressional appropriation—not a government program or activity funded from general appropriations."); *Hinrichs v. Speaker of House of Representatives of Indiana Gen. Assembly*, 506 F.3d 584, 598 (7th Cir. 2007) (State taxpayers "must establish the requisite nexus between their status and the challenged enactment in order to meet the test articulated in *Flast*.").

Nor is Daryl eligible for municipal taxpayer standing. Rather than returning with allegations that demonstrate "that the municipality has actually expended funds *on the allegedly illegal elements* of the disputed practice," *see Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 735 (7th Cir. 2020), the proposed second amended complaint basically repackages and re-presents the allegations this Court has already

said were insufficient. The plaintiffs allege that the Board used public funds and resources to create environments where Hindu beliefs and Transcendental Meditation were practiced. 2d Amd. Compl. ¶ 127. But there is a chasm between using public funds for ancillary services (e.g., school operations or construction) that Quiet Time happened to benefit from, and using funds to directly support the allegedly illegal elements of Quiet Time. The former is legal; the latter is not.

Because the proposed second amended complaint is devoid of allegations that the Board expended funds *on* the allegedly illegal elements of the Quiet Time program, the complaint does not cure the deficiencies regarding Darryl's taxpayer standing.

## C.     SHOS's and CLUB's standing

In the prior complaint, neither SHOS nor CLUB met the requirements for associational standing because they failed to allege that their members sustained an injury and had standing to sue. *Separation of Hinduism From Our Schs.*, 2021 WL 2036536, at *10–11. In the proposed second amended complaint, they supplement their claims. Now, SHOS says that its membership "includes each individually named Plaintiff in this matter, as well as . . . similarly situated unnamed others." 2d Amd. Compl. ¶ 10. CLUB alleges that its membership "includes individual churches and ministries associated with students who attended the CPS schools that facilitated the 'Quiet Time' program." *Id.* ¶ 11.

Those revisions do not get either organization past the post. One element of associational standing is that "neither the claims asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Disability Rts. Wisconsin, Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 801 (7th Cir. 2008).

The proposed second amended complaint, like the first, seeks monetary damages along with injunctive and declaratory relief. But actions for monetary damages require the participation of individual members. *See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996) ("'[I]ndividual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members, but . . . such participation would be required in an action for damages to an association's members."). "Associational standing is inappropriate if whatever injury may have been suffered is peculiar to the individual members concerned, and both the fact and extent of injury would require individualized proof." *Duncan Place Owners Ass'n v. Danze, Inc.*, 927 F.3d 970, 977 (7th Cir. 2019) (internal quotation marks omitted) (holding that condominium association could not assert damages on behalf of individual unit owners); *see also Sanner v. Bd. of Trade of City of Chicago*, 62 F.3d 918, 923 (7th Cir. 1995) (concluding that there could be no associational standing in a suit that required "the calculation of damages for each of the individual farmers").

SHOS and CLUB are not be able to seek injunctive or declaratory relief either. A plaintiff "must establish that he has sustained or is immediately in danger of sustaining some direct injury." *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001). Neither an "abstract injury," "past exposure to illegal conduct," nor speculation that a plaintiff "may suffer the same injury at some time in the future," will suffice in demonstrating "a present case or controversy regarding prospective equitable relief." *See id.* (internal quotation marks omitted).

The plaintiffs have not established a significant likelihood and immediacy of future injury. The Quiet Time program ended in 2019. *See* Dkt. no. 19–2 at ECF p. 2–3

of 3; dkt. no 19–3 at ECF p. 2–17 of 17. And the plaintiffs have not demonstrated that there is a realistic threat the program will be restarted. *See Separation of Hinduism From Our Schs.*, 2021 WL 2036536, at *12.

The Court also notes that CLUB faces a third standing-related problem. To have standing to sue, its members would need to have standing to sue in their own right. *See Disability Rts.*, 522 F.3d at 801. CLUB does not allege that the students "associated" with its membership-ministries participated in the Quiet Time program and were injured because of their participation.

In sum, SHOS and CLUB lack standing to pursue their claims.[5]

## D. Section 1983 claims against DLF and the University

In the prior complaint, the Court dismissed the remaining plaintiffs' 42 U.S.C. § 1983 claims and their IRFRA claims against the David Lynch Foundation and the University of Chicago. *See Separation of Hinduism From Our Schs.*, 2021 WL 2036536, at *15–18. The proposed second amended complaint adds new allegations to avoid that same result.

As indicated in the Court's earlier ruling, a private actor like DLF and the University is subject to liability under 42 U.S.C. § 1983 only if the plaintiffs adequately allege that the private actor was "a willful participant in joint action with the State or its agents." *Id.* at *16. "To establish [section] 1983 liability through [the joint participation doctrine], a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2)

---

[5] To the degree the Williamses seek to resuscitate their claims for injunctive and declaratory relief, that effort fails for the same reasons.

those individual(s) were willful participants in joint activity with the State or its agents."
*Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (alterations accepted; internal
quotation marks omitted).  Bare allegations of joint action or a conspiracy are
insufficient, *id.* at 617; as with any claim, sufficient facts must be alleged to make the
claim of joint action or conspiracy plausible.

The plaintiffs now allege that both DLF and the University knew of the allegedly
unconstitutional elements of Quiet Time and went forward with the program in
conjunction with the Board.  With regard to DLF, the plaintiffs allege that it "specifically
created the 'Quiet Time' program as a potential vehicle for teaching [Transcendental
Meditation] in the public schools . . . despite knowing of the religious elements of TM
and the 'Quiet Time' program."  2d Amd. Compl. ¶ 21.  With regard to the University, the
plaintiffs allege that it "became familiar with the religious elements of TM and the 'Quiet
Time' program as part of their vetting process."  *Id.* ¶ 24.  The plaintiffs allege that DLF,
the University, and the Board "worked collaboratively" to establish parameters for the
program and to implement it.  *Id.* ¶¶ 30, 31.  The plaintiffs allege that both entities knew,
in proposing the program, that they "would be violating the First Amendment rights of . .
. students, teachers, and parents of minor students."  *Id.* ¶¶ 22, 25.

These are not "bare allegations" of willful participation in joint action or
conspiracy, as was the case in *Spiegel*.  *See Spiegel*, 916 F.3d at 617.  Rather, the
allegations are that DLF and the University were directly and jointly involved in planning
and implementing the program in the schools.  The Court does not view this as an
implausible allegation with regard to either entity:  DLF is claimed to have created the
program as part of its mission of "widespread implementation of Transcendental

Meditation," 2d Amd. Compl. ¶ 16, and given its background it is certainly plausible that

DLF knew of the aspects of Transcendental Meditation and the Quiet Time program that

are claimed to have caused the program to run afoul of the First Amendment. With

regard to the University, given the allegations that it vetted the program and participated

directly in its implementation—allegations that the Court must take as true at this

stage—it is likewise plausible that the University was aware of the same features of the

program that are alleged to have made it unconstitutional.

The Court therefore overrules DLF and the University's arguments that the

plaintiffs have failed to adequately allege joint participation in a way sufficient to render

them potentially liable for the violation of the remaining plaintiffs' constitutional rights.

The University next argues that plaintiffs have not adequately alleged its liability

under *Monell*. (DLF does not make this argument and thus has forfeited the point.)

Under *Monell*, which the Seventh Circuit has extended to private corporations, *see, e.g.,*

*Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017), an entity is not

liable under section 1983 just because it employs the alleged tortfeasor. *Spiegel*, 916

F.3d at 617. Thus to sustain a claim under section 1983 in this circuit against an entity

like the University, a plaintiff must plausibly allege that the "constitutional violation was

caused by an unconstitutional policy or custom of the [entity] itself." *See Shields v.*

*Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).

The University argues the plaintiffs have not alleged that its participation in the

Quiet Time program was the result of an official policy or custom. The Court agrees;

the plaintiffs have made no effort to allege this and did not reply to this argument in the

University's response. Rather, the plaintiffs allege only that University employees were

sympathetic to the Quiet Time program and conducted research involving students in the program.  *See* 2d Amd. Compl. ¶¶ 17, 23, 27, 170.  That is not sufficient to impose liability under *Monell*.

DLF, which as noted has not argued the plaintiffs failed to allege *DLF's* liability under *Monell*, makes a different *Monell*-related argument:  it contends that the plaintiffs have not alleged any basis for *the Board's* liability under *Monell* and thus DLF could not have conspired with a government actor under section 1983.  The argument makes no sense.  Joint participant liability does not require DLF to have acted in concert with an entity claimed to be liable under *Monell*; any state actor will do.  One can easily infer from the complaint that in setting up and carrying out the Quiet Time program at Bogan High School (and other schools), DLF participated with *someone* employed by the Board, and that is sufficient.

In sum, although the remaining plaintiffs' section 1983 claims against the University remain deficient, DLF is not entitled to dismissal of these claims.

**E.     IRFRA claims against DLF and the University**

The proposed second amended complaint adequately states IRFRA claims on behalf of Amontae Williams against DLF and the University (the Court previously dismissed Darryl Williams's IRFRA claim, and the plaintiffs have not attempted to cure the basis for dismissal).  IRFRA is substantially identical to the federal Religious Freedom Restoration Act (RFRA), and Illinois courts find federal case law "instructive" in interpreting it.  *See People v. Latin Kings St. Gang*, 2019 IL App (2d) 180610-U ¶ 95 n.1.  Federal courts have held that RFRA's "acting under color of law" phrase is the same as "acting under color of law" in section 1983 and triggers the same analysis.

*Separation of Hinduism From Our Schs.*, 2021 WL 2036536, at *18 (citing cases). Just as in its prior opinion, the Court applies "the same analysis for 'acting under color of law' under RFRA—section 1983's analysis—to the IRFRA claims at issue here." *Id.* Because the plaintiffs have properly alleged joint participation, the IRFRA claims against DLF and the University are viable and those defendants are potentially liable for the violation of Amontae Williams's constitutional rights. The University remains a defendant on this claim, in contrast to the section 1983 claims, because *Monell*-like allegations are not required to maintain a suit under IRFRA against an entity.

## Conclusion

For the reasons stated above, the Court partly grants and partly denies the plaintiff's motion for leave to amend [docket no. 71]. The claims that remain are the Williamses' section 1983 claims for damages against the Board and DLF and Amontae Williams's IRFRA claims against all three defendants. The proposed second amended complaint otherwise fails to state a viable claim, as discussed in this opinion, whether on the merits or for lack of standing. Plaintiffs should now file the second amended complaint as its own docket entry. The Court will discuss further scheduling with the parties at the telephonic status hearing set for tomorrow, August 18, 2021.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 17, 2021