cIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMONTAE WILLIAMS, et al., ) | |
| Plaintiffs, ) | Case No. 1:20-cv-04540 |
| v. ) | |
| ) | Judge Matthew F. Kennelly |
| BOARD OF EDUCATION OF THE ) | |
| CITY OF CHICAGO, et al., ) | Magistrate Judge Heather M. McShain |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE THEIR THIRD AMENDED COMPLAINT**

Defendants, Board of Education of the City of Chicago ("Board"), The University of Chicago (the "University"), and the David Lynch Foundation ("DLF") (hereinafter "Defendants"), through their undersigned counsel, oppose Plaintiff Amontae Williams and Plaintiff Darryl Williams' (together, "Plaintiffs") Motion For Leave To File Their Third Amended Complaint (the "Motion"). As set forth below, Plaintiffs' request to file an amended pleading after the close of fact discovery, long after the deadline for the amendment of pleadings and after Plaintiffs filed their motions for class certification fails to satisfy Rule 16 and Rule 15. In support of their opposition, Defendants state as follows:

**BACKGROUND & PROCEDURAL HISTORY**

Plaintiffs filed their original Complaint on August 3, 2020. See Compl. (Dkt. 1). Plaintiffs amended their complaint to add class claims on September 25, 2020. See Am. Compl. (Dkt. 35). Defendants moved to dismiss Plaintiffs' Amended Complaint on October 23, 2020. See Dkt Nos. 42-51. This Court ruled on Defendants' Motions to Dismiss on May 21, 2021 and granted Defendants' motions in part. See generally Mem. Op & Order (Dkt. 65). Among other things, the Court dismissed both Plaintiffs' Section 1983 claims against the University, and dismissed Plaintiff Darryl Williams' Illinois Religious Freedom Restoration Act ("IRFRA") claim. See id.

at 20, 35-41. On June 28, 2021 Plaintiffs moved for leave to amend and file their proposed second amended class action complaint. See Mot. for Leave (Dkt. No. 71). This Court ruled on Plaintiffs' motion for leave to amend on August 17, 2021, holding that Plaintiffs had failed to state a Section 1983 claim against the University and noting that Plaintiff Darryl Williams had not attempted to re-plead his dismissed IRFRA claim. See Mem. Op. & Order (Dkt. 81) at 13. The operative complaint, Plaintiffs' Second Amended Class Action Complaint was filed on September 9, 2021. See Am. Compl. (Dkt. No. 89). This complaint contains two (2) counts: Count I, a Section 1983 claim for violation of the First Amendment's Establishment and Free Exercise Clauses against the Board and DLF (but not the University); and Count II, a claim for violation of the IRFRA against all Defendants on behalf of Amontae Williams. See id.; see also Mem. Op. & Order (Dkt. 81) at 14 (identifying remaining claims).

On September 2, 2021, this Court set a December 3, 2021 deadline for amending pleadings and adding parties. See Dkt. No. 88. On September 30, 2021, Defendants filed their Answers and Affirmative Defenses to Plaintiffs' Second Amended Complaint. See Dkt. Nos. 91-93. On November 10, 2021, the Board produced the two Agreements (2015 Master Research Services Agreement between the University and Board and 2018 DLF Services Agreement between the Board and DLF), which Plaintiffs now identify as the basis for wishing to amend their complaint. See Mot. (Dkt. 172) at 11, 13. After the Board had already produced these agreements, on December 2, 2021, Plaintiffs moved to extend the deadline to amend the pleadings to December 24, 2021. See Mot. (Dkt. 110). Granting Plaintiffs' motion on December 9, 2021, the Court set a December 24, 2021 deadline for amending the pleadings. See Minute Entry (Dkt. 114). Plaintiffs did not seek to further amend their pleadings by that deadline, nor did Plaintiffs ask that the

deadline be extended in light of ongoing discovery. On December 21, 2021, this Court extended the fact discovery deadline to March 11, 2022. See Minute Entry (Dkt. 121).

On March 15, 2022 (four days after the close of fact discovery), Plaintiffs filed a Motion For Order Confirming Their Right To File Second Supplemental 26(a)(1) Disclosures Or, In The Alternative, To File Their Third Amended Complaint without attaching a copy of the proposed amended complaint. See Mot. (Dkt. 160). After briefing and a hearing, the Court denied the Motion For Order without prejudice on March 25, 2022. See Minute Entry (Dkt. 170).

On April 8, 2022, almost one month after the close of fact discovery and almost four months after the deadline to amend the pleadings, Plaintiffs filed the instant Motion For Leave, attaching a Proposed Third Amended Complaint containing significant new factual allegations, adding a Section 1983 claim against the University, an Illinois breach of contract claim against all Defendants, and a new "claim" for punitive damages against DLF and the University. See Proposed Third Am. Compl. (Dkt. 172-1) ¶¶ 130-48, 153-62. In addition, while Darryl Williams has no claim against the University in the operative complaint, Plaintiffs' Proposed Third Amended Complaint seeks to assert claims by Darryl Williams against the University under Section 1983 for violation of the First Amendment, as well as claims for violation of the IRFRA, breach of contract and punitive damages. See id. ¶¶ 2, 4-5, 130-162.

## ARGUMENT[1]

### 1. The Court Should Deny Plaintiffs' Untimely Request As Plaintiffs Have Failed To Meet Their Burden Under Rule 16

Plaintiffs have brought their Motion for Leave solely pursuant to Federal Rule of Civil Procedure 15. See Motion at 1. In doing so, they have disregarded that this Court entered a

---

[1] Unless stated otherwise, all emphasis is supplied, and all internal citations and quotations are omitted from all quoted material herein.

3

Scheduling Order that initially imposed a deadline for amendment of the pleadings of December 3, 2021, and subsequently, at Plaintiffs' request, extended that deadline to December 24, 2021 – a deadline that expired almost four months ago. See Dkt. Nos. 88, 110, 114. Because Plaintiffs seek to amend their pleadings after expiration of the deadline in the Court's Scheduling Order, Plaintiffs must show "good cause" under Federal Rule of Civil Procedure 16. See Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent"); Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am., 424 F.3d 542, 553 (7th Cir. 2005) ("To amend a pleading after the expiration of the trial court's Scheduling Order deadline to amend pleadings, the moving party must show 'good cause'").

Good cause requires a showing of diligence by the party seeking the amendment. See Trustmark Ins. Co., 424 F.3d at 553; CMFG Life Ins. Co. v. RBS Sec., Inc., 799 F.3d 729, 749 (7th Cir. 2015). Rule 16(b)(4)'s "good cause" requirement, which focuses on diligence, is more onerous than Rule 6(b)(1)(B)'s "excusable neglect" requirement. See McCann v. Cullinan, 2015 WL 4254226, at *11 (N.D. Ill. July 14, 2015). This heightened good-cause standard of Rule 16(b)(4) is applied before considering whether the requirements of Federal Rule of Civil Procedure 15(a)(2) are satisfied. See Alioto v. Town of Lisbon, 651 F.3d 715, 719-20 (7th Cir. 2011); Simmons v. City of Pekin, 2021 WL 6104825, at *2 (C.D. Ill. 2021).

Here, Plaintiffs do not even argue, much less demonstrate, that good cause exists for their proposed untimely amendment. They base their new causes of action on evidence produced on November 10, 2021 by the Board: 1) 2015 Master Research Services Agreement between the University and Board and 2) the March 1, 2018-June 30, 2018 Services Agreement between DLF

4

and the Board. See Nov. 10, 2021 Corresp. fr. M. Penney, Ex. 1 hereto.[2] Neither contract is a recently discovered piece of evidence. Not only are these agreements publicly available online, Plaintiffs have had both agreements for approximately five months. Indeed, Plaintiffs had these documents well in advance of filing a motion to extend the deadline for amendment of the pleadings from December 3, 2021 to December 24, 2021, and as their motion shows, they were looking at possible additional theories for amendment at that time. See Dkt. 110. Yet, despite having had these documents well before the deadline for amendment, Plaintiffs did not seek leave until almost four months after its expiration, after fact discovery has closed, and after they filed two currently pending motions for class certification.

Plaintiffs do not and cannot show diligence in pursuing an amendment under these circumstances. Courts in this Circuit have ruled that good cause does not exist where the plaintiff knew or should have known of the facts underlying the proposed amendment, but waited until after the deadline to seek leave to amend. See Mintel Int'l Grp., Ltd. v. Neergheen, 636 F. Supp. 2d 677, 689-90 (N.D. Ill. 2009) (no good cause existed where plaintiff knew of the facts underlying the amendment but waited 56 days after the deadline to seek leave to amend); Curtis v. TransCor Am., LLC, 2012 WL 1080116, *3 (N.D. Ill. Mar. 29, 2012) (no good cause where plaintiff's theory of the case did not change and he had a significant portion of the evidence relevant to the amendment prior to the deadline); Arrigo v. Link, 836 F.3d 787, 797 (7th Cir. 2016) (affirming the denial of leave to amend four months after the deadline); USA Track & Field, Inc. v. Leach, 2017 WL 2901220, *1 (S.D. Ind. Apr. 12, 2017) (denying request for leave made three months after the deadline).

---

[2] The 2015 Master Research Services Agreement between the Board and University is bates numbered BOE 001231-001251; the 2018 Services Agreement between DLF and the Board is bates numbered BOE 001179-001206.

5

## 2. The Court Should Deny Plaintiffs' Untimely Request As Plaintiffs Have Failed To Meet Their Burden under Rule 15

Even under Rule 15's more lenient standard, Plaintiffs' Motion should be denied. See disc. infra at 5-15. Although Rule 15 permits the amendment of pleadings, "leave to amend is not granted automatically." JP Morgan v. Drywall Serv., 265 F.R.D. 341, 346 (N.D. Ind. 2010). Courts have broad discretion to deny leave to amend where there is undue delay, bad faith, a dilatory motive, a repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opponent, or if the amendment would be futile. See Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC, 870 F.3d 682, 693 (7th Cir. 2017); Villa v. City of Chi., 924 F.2d 629, 632 (7th Cir. 1991). Plaintiffs bear "the burden of proof to show that no unfair prejudice will result to" Defendants. Id. at 352. Plaintiffs fail to establish that they satisfy Rule 15 and as set forth below, they do not.

### A. Plaintiffs Unduly Delayed Seeking To File A Third Amended Complaint

Plaintiffs have unduly delayed seeking to amend their pleading. See JP Morgan, 265 F.R.D. at 346 (denying leave to amend where proposed amendment followed the close of fact discovery). Plaintiffs' Motion does not—and presumably cannot—explain why they waited approximately five months after receiving the agreements that apparently form the basis for their new claims to move to amend their Complaint. See generally Mot. (Dkt. 172); see also disc. supra at 4-5. While delay alone generally is an insufficient reason to deny a motion to amend, "the longer the delay, the greater the presumption against granting leave to amend." Ernst v. City of Chicago, 2012 WL 27594, at *2 (N.D. Ill. Jan. 5, 2012) (internal quotations and citations omitted); Schor v. Daley, 563 F. Supp. 2d 893, 904 (N.D. Ill. 2008) (motion to amend was unduly delayed when the motion to dismiss had been fully briefed for almost two months, and plaintiffs had already amended their complaint almost five months previously).

6

In addition, courts in this Circuit have held that a plaintiff unduly delayed seeking leave to amend where the proposed amendment appeared to be motivated by the plaintiff's concern it would lose at summary judgment. See, e.g., Johnson v. Methodist Med., 10 F.3d 1300, 1304 (7th Cir. 1993) (affirming denial of leave to amend where plaintiff chose to amend claims "suggest[ed] a doubt about being able to prove" original claims); Kleinhans v. Lisle Sav. Profit Sharing Tr., 810 F.2d 618, 625 (7th Cir. 1987) (affirming denial of leave to amend where motion "represents an attempt to avoid the effect of summary judgment on his other claims"); JP Morgan, 265 F.R.D. at 352. Plaintiffs' proposed amendment seems to be motivated by similar reasons. For example, Plaintiff Amontae Williams' Section 1983 First Amendment and IRFRA claims require, among other things, that he prove the complained-of government action—i.e., his participation in transcendental meditation—burdened his sincerely-held religious beliefs. See Diggs v. Snyder, 775 N.E.2d 40, 45 (Ill. App. Ct. 2002); 775 ILCS 35/20; Mayle v. U.S., 891 F.3d 680, 685 (7th Cir. 2018). In support of his IRFRA claim, Amontae Williams claimed that he "was a Christian of the Baptist denomination" prior to being trained and participating in transcendental meditation, but "now identifies as an agnostic and believes the loss of his Christian faith was due to the Quiet Time program." See Pl.'s Resp. to Interrog. No. 8, Ex. 2 hereto. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▇▇▇▇▇▇▇

In addition, Mr. Williams has claimed that as a result of participating in transcendental meditation, Amontae "changed from having a normal outward appearance, being lighthearted, and enjoying time with his friends to becoming gothic, wearing dark and strange clothes and becoming isolated in his room and less social" and began punching holes in walls. See Pl.'s Resp. to Interrog. Nos. 9-10, Ex. 2 hereto. ▇▇▇▇

▇▇▇▇▇▇▇▇

Plaintiffs and their counsel no doubt recognize that Mr. Williams' deposition testimony undercuts his claims, and this revelation (along with Mr. Williams' sworn testimony) no doubt explains Plaintiffs' eleventh-hour pivot to new legal theories. But see Johnson, 10 F.3d at 1304 (denying motion for leave to amend where plaintiff "realized that she would lose based on the specific claims contained in the second amended complaint"). But the fact that discovery has undermined Mr. Williams' claims does not justify inserting new claims at this late stage of the litigation. See id.; see also Doe v. Howe Military Sch., 227 F.3d 981, 990 (7th Cir. 2000) ("[P]leading is not like playing darts: a plaintiff can't keep throwing claims at the board until she gets one that hits the mark.").

### B. Allowing Plaintiffs To Amend Their Complaint To Add New Claims Would Unfairly Prejudice Defendants

Allowing Plaintiffs to amend their pleadings at this late stage—after the close of fact discovery and after Plaintiffs have filed their motions for class certification—would unfairly prejudice Defendants. "Undue prejudice has been found to exist when an amended complaint would require the non-moving party to engage in substantial discovery and when it would deprive the non-moving party of a summary judgment victory." JP Morgan, 265 F.R.D. at 352. Unfair prejudice may also result if the non-moving party could not have foreseen litigating the new claims. See Campania Mgmt. v. Rooks, Pitts & Poust, 290 F.3d 843, 850 (7th Cir. 2002). Plaintiffs' proposed amendment unduly prejudices Defendants for several reasons.

First, Plaintiffs' new legal theories would "require new discovery and would require duplication of efforts" that Defendants already underwent once to comply with their discovery obligations. JP Morgan, 265 F.R.D. at 353. Plaintiffs' assertion that "additional discovery by Defendants should be unnecessary" or even "limited" is simply untrue. See Mot. (Dkt. 172) ¶ 11. For example, because Plaintiff Darryl Williams does not have a claim against the University (see disc. supra at 2-3), the University did not seek discovery from him. The Proposed Third Amendment, however, re-asserts or otherwise brings claims on behalf of both Plaintiffs (i.e., Darryl Williams and Amontae Williams). See Proposed Third Am. Compl (Dkt. 172-1). If Plaintiffs were permitted to amend the Second Amended Complaint to add claims by Darryl Williams against the University, the University would seek to serve discovery requests on Darryl Williams related to those claims and seek to depose him, as is the University's right. See, e.g., Murphy v. White Hen, 691 F.2d 350, 353 (7th Cir. 1982) ("Amending the complaint at this late stage clearly would have prejudiced the defendant, who . . . may have been forced to duplicate its efforts if discovery were reopened.").

9

And the new claims Plaintiffs intend to assert would require that discovery be re-opened so that Defendants could take discovery related to those claims as well as defenses to those claims. For example, no discovery was taken on the circumstances surrounding the drafting or implementation of the Master research services agreement, whether the Board and the University intended there to be any third-party beneficiaries to the research services agreement, or the facts that supposedly created duties on the part of Defendants to Plaintiffs. Neither Plaintiff was deposed on their apparent newfound belief that they are third-party beneficiaries of any agreements, or that Defendants owed them duties. Written and oral discovery would need to be re-opened.[3] In addition, the Defendants could not have foreseen the possibility of litigating the asserted new claims, as the parties did not conduct discovery on those claims (let alone potential defenses to those claims). See JP Morgan, 265 F.R.D at 355; Campania, 290 F.3d at 850; disc. supra at 3-8.

Second, Plaintiffs filed motions for class certification on March 7, 2022 based on the claims in the Second Amended Complaint. See Mot. for Class Cert. (Dkt. 155); Mot. for Class Cert. (Dkt. 156).[4] Defendants are currently drafting a consolidated response to Plaintiff Amontae Williams' motion to certify a student class, and DLF and the Board are also preparing their response to Darryl Williams' motion to certify a parent class. The Court has entered the Parties' agreed briefing schedule on Plaintiffs' motions for class certification, and Defendants' oppositions to those

---

[3] Written discovery closed on January 31, 2022. See Minute Entry (Dkt. 121). Fact discovery closed on March 11, 2022. See id.

[4] Plaintiff Amontae Williams filed a motion to certify a proposed class of students who participated in the Quiet Time program in CPS during the academic calendar for 2015-16, 2016-17, 2017-18 and 2018-19. See Mot. for Class Cert. (Dkt. 156) at 3. Plaintiff Darryl Williams filed a motion to certify a proposed class of parents, legal guardians, or other persons acting in loco parentis for any student in the proposed student class. See Mot. for Class Cert. (Dkt. 155) at 3.

motions are due in one week, on April 22, 2022. See Minute Entry (Dkt. 163). Allowing Plaintiffs to file a pleading now asserting new claims would require Defendants to file another set of answers and/or motions to dismiss and to divert significant resources from the opposition to Plaintiffs' motion for class certification in order to do so, and also to engage in significant additional fact discovery. Moreover, Plaintiffs have not indicated if they would seek leave to file new motions for class certification that account for the proposed new claims. Even if they did not, however, Defendants would want to address those new claims in responding to the class motions, including to rebut adequacy and incorporate facts from re-opened discovery as appropriate. Allowing Plaintiffs to amend their pleadings would thus postpone rulings on Plaintiffs' motions for class certification and Defendants' motions for summary judgment.[5] Because Plaintiffs' belated proposed amendments would delay the case further and require the Defendants to "engage in a new contest on different issues" more than 18 months after this case was filed, after fact discovery has closed and as the Parties are engaging in expert discovery and briefing on class certification, Plaintiffs' Motion should be denied. See, e.g., Johnson, 10 F.3d at 1304 (denying leave to amend where defendant would have to engage in substantial additional discovery).

### C. Plaintiffs' Proposed Amendments Would Plainly Be Futile

Plaintiffs' motion for leave should also be denied because their proposed amendment would be futile. See, e.g., Bethany Pharmacal v. QVC, 241 F.3d 854, 861 (7th Cir. 2001) (affirming denial of motion for leave where proposed amendment to add new claim would be futile). An amendment is futile when it "reasserts a claim previously determined." Bower v. Jones, 978 F.2d 1004, 1008 (7th Cir. 1992). An amendment is also futile when it fails to state a valid

---

[5] Under the current schedule, dispositive motions shall be filed by July 25, 2022. See Minute Entry (Dkt. 121.)

theory of liability or would not survive a motion to dismiss. See id. Plaintiffs' Proposed Third Amended Complaint seeks to assert three new causes of action against the University: 1) Section 1983 for violation of the First Amendment (Proposed Third Am. Compl. (Dkt. 172-1) ¶¶ 130-48); 2) breach of contract (id. ¶¶ 153-59); and 3) punitive damages (id. ¶¶ 160-162). It also appears to assert claims by Darryl Williams against the University without curing the bases for the Court's previous dismissal of two of those claims (the Section 1983 and IRFRA claims). See id. ¶¶ 21, 86, 130-148, 149-152; see also Mem. Op & Order (Dkt. 65) at 41; Mem. Op. & Order (Dkt. 81) at 13. Further, Plaintiff's proposed complaint seeks to assert two new claims against DLF: 1) breach of contract and 2) punitive damages. See Proposed Third Am. Compl. (Dkt. 172-1) ¶¶ 153-162. Finally, Plaintiffs' Proposed Third Amended Complaint seeks to assert an additional breach of contract/third party beneficiary claim against the Board. Id. ¶¶ 153-59. None would withstand a motion to dismiss.

First, Plaintiffs have twice already tried and failed to state a Section 1983 claim for violation of the First Amendment against the University. See Mem. Op. & Order (Dkt. 65) at 35-37; Mem. Op. & Order (Dkt. 81) at 12-13. This third effort fares no better. In its August 17, 2021 Order, the Court denied Plaintiffs leave to amend to assert a Section 1983 claim against the University because Plaintiffs "made no effort to allege" that the purported "constitutional violation was caused by an unconstitutional policy or custom of the [entity] itself." See Mem. Op. & Order (Dkt. 81) at 12. Even with the benefit of discovery, Plaintiffs have again "made no effort" to allege that the University is liable under Monell.[6] See generally Proposed Third Am. Compl. (Dkt. 172-

---

[6] It should be noted that the Court previously declined to dismiss Plaintiffs' claim against DLF under Monell, but only because Plaintiffs had represented to the Court that their theory of liability was not predicated upon DLF's contracting with, and use of, certified meditation instructors. See Mem. Op. & Order (Dkt. 65) at p. 37. Plaintiffs' proposed Third Amended Complaint now confirms that this is in fact precisely Plaintiffs' theory, and thus, it would be subject to a motion to dismiss if amendment were allowed.

12

1); AM Int'l v. Graphic Mgmt. Assocs., 44 F.3d 572, 578 (7th Cir. 1995) ("There is no point in granting a motion to amend a complaint if the amendment would not cure the infirmity that caused the original complaint to be dismissed.").

Second, the Court previously dismissed Darryl Williams's IRFRA claim, and Plaintiffs have not cured the previously identified deficiencies with that claim. See Mem. Op. & Order (Dkt. 65) at 41; see also Mem. Op & Order (Dkt. 81) at 13; Proposed Third Am. Compl. (Dkt. 172-1) ¶¶ 21, 130-148, 149-152.

Third, Plaintiffs propose to assert a breach of contract claim against all Defendants under a third-party beneficiary theory, a newly asserted theory that would not survive a motion to dismiss. See Proposed Third Am. Compl. (Dkt. 172-1) ¶¶ 153-59. To state a third-party beneficiary claim under Illinois law in general, "the alleged third-party beneficiary must be expressly named in the contract." See Carlson v. Rehab. Inst., 50 N.E.3d 1250, 1256 (Ill. App. Ct. 2016). But neither Plaintiff is mentioned or even broadly described anywhere in the contracts attached as Exhibits to the Proposed Third Amended Complaint. See generally Exs. K (DLF Agreement), L (University Agreement) (Dkt. 172-1). Notably, the Scope of Services in the DLF agreement does not cover services at Bogan High School where Plaintiff Amontae Williams attended, so it is unclear how he, let alone his father, could be a proposed third-party beneficiary under this contract. See Proposed Third Am. Compl. (Dkt. 172-1), Ex. K at Ex. A(III) (Program Structure). Plaintiffs cite a reference to the University's interest in studying how programs and interventions affect students' academic performance.[7] See Proposed Third Am. Compl. (Dkt. 172-

---

[7] Plaintiffs' allegation that the "University Services Agreement and the DLF Services Agreement both make clear, explicitly and by context, that they are intended to benefit students" is unsupported by the actual language of the contracts, and indeed, Plaintiffs do not support this conclusory allegation with any citation to either Exs. K or L or any paragraph or page therein. See Proposed Third Am. Compl. (Dkt. 172-1) ¶ 159.

13

1) ¶¶ 121-22. They similarly claim that the DLF Service Agreement creates a third-party beneficiary relationship with every CPS student because it makes a reference to Quiet Time positively affecting student stress. Id. ¶ 119. But a passing reference to the fact that the University generally intends to study programs that might affect students or that DLF's program will have a positive effect on students is simply insufficient under Illinois law to render students intended third-party beneficiaries. See, e.g., Carlson, 50 N.E.3d at 1256 ("[T]he mere reference to a party in a contract will not confer third-party beneficiary status[.]"); see also id. (holding contract between rehabilitation institute and transportation company for transport of patients did not render patients intended third-party beneficiaries); Estate of Willis II v. Kiferbaum Constr., 830 N.E.2d 636, 643 (Ill. App. Ct. 2005) (in order to overcome presumption against construing contract in favor of third-party beneficiary status, plaintiff must point to "an implication so strong as to be practically an express declaration"); F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, LLC, 372 Ill. App. 3d 89, 96 (1st Dist. 2007) (those who only reap incidental benefits from a contract and are not expressly declared to be direct beneficiaries in the agreement are not third-party beneficiaries).

Fourth, Plaintiffs appear to allege a hybrid common law breach and/or due process claim under the Illinois Constitution against the Board. To the extent Plaintiffs attempt to assert a Illinois common law claim against the Board through Count III, that attempt is also futile because Plaintiffs' new Illinois breach of contract (common law claim) is time-barred, and Plaintiffs have done nothing to explain why the claim should "relate back" under Rule 15(c). See 745 ILCS 10/8-101 (establishing a one-year limitations period for claims against a public entity).

Moreover, Plaintiffs' reference to the Board's Illinois Constitutional Law duty to protect CPS students also fails to state a claim because it does not identify the particular article(s) of the

14

Illinois Constitution Defendants allegedly violated, nor what article within the Illinois Constitution confers on the Board this alleged "duty to protect." See Proposed Am. Compl. ¶ 154. As a threshold matter, the Illinois Constitution does not expressly authorize a cause of action for constitutional violations, and the Illinois Supreme Court has not addressed whether an implied cause of action exists. See Doe v. Champaign Cmmty. Unit 4 Sch. Dist., 2012 WL 2370053, at *9 (C.D. Ill. Feb. 24, 2012), report and recommendation adopted in part, rejected in part on other grounds, 2012 WL 2370051 (C.D. Ill. June 22, 2012). Therefore, this Court would need to predict how the Illinois Supreme Court would rule to determine if there was a private right of action available to Plaintiffs. See id. However, without specific citations to the Illinois Constitution, the Board would be purely speculating about the basis of Plaintiffs' alleged Illinois Constitutional violations. As such, the Board anticipates filing a motion to dismiss on this count for failing to sufficiently allege this new claim under Iqbal.

Finally, Plaintiffs purport to bring a count for "punitive damages" against DLF and the University. Punitive damages are a type of relief and are not an independent cause action in Illinois. See Brummel v. Grossman, 121 NE.3d 970, 998 (Ill. App. 2018) ("Illinois does not recognize a cause of action for punitive damages alone"). Any amendment asserting a punitive damages claim is therefore futile. Moreover, it is unclear whether punitive damages are available to Plaintiffs under the IRFRA. See Goodman v. Carter, 2001 WL 755137, at *8 (N.D. Ill. June 29, 2001) (noting legislative text of IRFRA does not resolve whether punitive damages are embraced within the "appropriate relief"). If Plaintiffs' Motion is granted, Defendants respectfully reserve the right to brief the unavailability of punitive damages under the IRFRA and other pleading deficiencies in a motion to dismiss.

As set forth above, Plaintiffs' proposed amendments would be futile, and Plaintiffs' Motion should be denied. Bethany, 241 F.3d at 861.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Honorable Court deny Plaintiffs' Motion. Defendants further request any additional relief the Court deems appropriate.

Date: April 15, 2022 	 Respectfully Submitted,

**For Defendant The University of Chicago:**

/s/ Johanna Spellman
Johanna Spellman, One of the Attorneys for
Defendant The University of Chicago

Mark S. Mester (Illinois Bar No. 6196140)
mark.mester@lw.com
Johanna Spellman (Illinois Bar No. 6293851)
johanna.spellman@lw.com
Renatta Gorski (Illinois Bar No. 6332737)
renatta.gorski@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Carolyn M. Homer (pro hac vice)
carolyn.homer@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

**For Defendant the David Lynch Foundation:**

/s/ James J. Sipchen (with consent)
James J. Sipchen
Pretzel & Stouffer, Chartered
One S. Wacker, Suite 2500
Chicago, IL 60606
jsipchen@pretzel-stouffer.com

**For Defendant Board of Education of the City of Chicago:**

/s/ Elizabeth K. Barton (with consent)
Elizabeth K. Barton, Atty No. 6295848
Elizabeth K. Barton / ekbarton@cps.edu
Kaitlin T. Salisbury / ktsalisbury@cps.edu
Christina Rosenberg / crosenberg@cps.edu
Board of Education of the City of Chicago

17

                                                  Law Department
                                                  1 N. Dearborn, #900
                                                  Chicago, IL 60631

## CERTIFICATE OF SERVICE

      I, Johanna Spellman, certify that on April 15, 2022, a true and correct copy of the foregoing document was filed via email on all counsel of record as listed below.

| | |
|---|---|
| John W. Mauck<br>Andrew S. Willis<br>MAUCK & BAKER, LLC<br>1 N. LaSalle St., Suite 600<br>Chicago, Illinois 60602<br>Telephone: (312)726-1243<br>Facsimile: (866)619-8661<br>jmauck@mauckbaker.com<br>awillis@mauckbaker.com<br>*Counsel for Plaintiffs* | James J. Sipchen<br>PRETZEL & STOUFFER, CHARTERED<br>One S. Wacker Drive- Suite 2500<br>Chicago, IL 60606-4673<br>(312) 578-7422<br>jsipchen@pretzel-stouffer.com<br>*Counsel for The David Lynch Foundation* |
| Elizabeth K. Barton<br>Kaitlin T. Salisbury<br>Christina L. Rosenberg<br>Board of Education of the City of Chicago<br>1 N. Dearborn St., Suite 900<br>Chicago, Illinois 60602<br>Telephone: (312)553-1700<br>ekbarton@cps.edu<br>ktsalisbury@cps.edu<br>clrosenberg@cps.edu<br>*Counsel for Board of Education of the City of Chicago* | Mark L. Zaiger<br>SHUTTLEWORTH & INGERSOLL, P.C.<br>500 U.S. Bank Bldg, P.O. Box 2107<br>Cedar Rapids, IA 52406<br>(319) 365-9461<br>mlz@shuttleworthlaw.com<br>*Counsel for The David Lynch Foundation* |

Date: April 15, 2022                    */s/ Johanna Spellman*
                                                     Johanna Spellman, One of the Attorneys for
                                                     Defendant The University of Chicago