THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Amontae Williams, *et al.*, | ) | |
| Plaintiffs, | ) | Case No. 1:20-cv-04540 |
| v. | ) | |
| | ) | The Honorable Matthew F. Kennelly |
| Board of Education of the City of Chicago, *et al.*, | ) | Magistrate Judge Heather M. McShain |
| Defendants. | ) | |

## JOINT RESPONSE IN OPPOSITION TO
## DARRYL WILLIAMS' MOTION FOR CLASS CERTIFICATION

Defendants Board of Education of the City of Chicago ("BOE") and The David Lynch Foundation ("DLF"), respectfully submit this combined memorandum in opposition to the motion for class certification (Dkt. 155) (the "Motion") filed by Plaintiff Darryl Williams ("Darryl"):

### INTRODUCTION

Darryl failed to meet his burden of establishing his claims qualify for class certification. Indeed, discovery confirmed what was raised at the beginning of this case – Darryl does not possess Article III standing to sue under 42 U.S.C. § 1983 for interference with his right to direct the religious upbringing of his son, Amontae. Darryl lacks standing because Amontae reached the age of majority *before* he ever volunteered to learn or actually learned Transcendental Meditation ("TM"), which is the practice alleged to have offended the Free Exercise and Establishment Clauses of the First Amendment.

Darryl's lack of standing should end the inquiry, and the result should be the dismissal of all of his claims in this litigation with prejudice. However, even if Darryl did have standing, he still cannot satisfy the requirements of Fed. R. Civ. P. 23(a) or (b). Darryl's class definition is impermissibly overly broad, and he cannot satisfy Rule 23(a)'s requirements of commonality, typicality, or adequacy. Darryl is also unable to satisfy Rule 23(b) because individualized issues predominate over any common issues, and the class action device is not a superior method for resolving this lawsuit.

**BACKGROUND**

The relevant factual and procedural background is set forth in Defendants' Combined Opposition to Amontae's Motion to Certify a Class of Students who Attended the Quiet Time Program ("Opposition to Motion to Certify a Student Class") and is incorporated herein by reference. Amontae and Darryl, as his adoptive father, are plaintiffs in this case. Dkt. 89; Ex. 34, p. 32:3-12.[1] Amontae's adoptive mother, Rohanda, is not a plaintiff. Ex. 11, p. 42:17-21. On June 30, 2020, Darryl signed a "Legal Services Agreement" with his attorneys at Mauck & Baker. *See*, Ex. 35. That Agreement is nearly identical to the one his son, Amontae, signed.[2] *Compare*, Ex. 24 with Ex. 35.

On August 30, 2020, Darryl, Amontae and three other plaintiffs, filed a Complaint against the BOE, DLF and the University of Chicago ("University") alleging violations of § 1983 and the Illinois Religious Freedom Restoration Act ("IRFRA"). Dkt. 1. The operative pleading is the Second Amended Complaint. Dkt. 89. After rulings on motions to dismiss, Darryl's only remaining claim in this case is against the BOE and DLF for violation of the Free Exercise and Establishment Clauses of the First Amendment under 42 U.S.C. § 1983. Dkt. 81, p. 14. Further, Darryl's sole claim is for damages – the Court has dismissed his claim for injunctive and equitable relief. Dkt. 81, p. 14; Dkt. 65, p. 45. Darryl brings his claim on behalf of a class of parents for purported violations of their children's rights while they were CPS students in Chicago Public Schools ("CPS"). Dkt. 155, p. 3.

---

[1] To avoid burdening the Court with duplicative exhibits, all Defendants have filed one consolidated set of exhibits for the Opposition to Proposed Student Class and the Opposition to Proposed Parent Class. Those exhibits, which are attached to the Opposition to Proposed Student Class, are referenced and cited herein as "Ex.___." The BOE and DLF will also provide a full set of exhibits cited only in the Opposition to Proposed Parent Class separately if it would be more convenient for the Court.

[2] The only substantive difference between Darryl's and Amontae's engagement letters is that Amontae's letter includes a provision entitling Mauck & Baker to one-third of Amontae's total recovery, whereas Darryl's does not contain such a provision.

**ARGUMENT**

I. **DARRYL'S MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED BECAUSE HE LACKS ARTICLE III STANDING TO BRING HIS CLAIM.**

The United States Supreme Court has stated: "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The standing requirement inheres in Article III of the Constitution, which ensures that a plaintiff has a personal stake in the outcome. *Perry v. Sheahan,* 222 F.3d 309, 313-14 (7th Cir. 2000). To establish standing, a plaintiff must show by a preponderance of the evidence: (1) an injury in fact, meaning an invasion of a legally protected interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the defendants' actions; and (3) that a favorable decision is likely to redress the injury. *Lujan* v. *Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

Jurisdiction over a class action depends upon a named plaintiff's standing. *Walters v. Edgar*, 163 F.3d 430, 432-33 (7th Cir. 1998). "While a named plaintiff's standing to bring certain claims on behalf of the class need not be decided before class certification, a named plaintiff's Article III standing to bring her own claim is a threshold jurisdictional issue." *Vega v. Mid. Am. Taping & Reeling, Inc.*, 2018 U.S. Dist. LEXIS 98543, *5 (N.D. Ill. 2018). Thus, a named plaintiff's Article III standing is an issue antecedent to class certification. *Meyers v. Nicolet Rest. Of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016); *Garner v. Buzz Finco LLC*, 2022 U.S. Dist. LEXIS 66454, *11 (N.D. Ill. 2022).

Further, a party may not redress his injury by reference to someone else's rights. *Marin-Garcia v. Holder*, 647 F.3d 666, 670 (7th Cir. 2011); *U.S. Awami League, Inc. v. City of Chicago*, 110 F.Supp.3d 887, 891 (N.D. Ill. 2015) ("[A] plaintiff may not claim injury to another as a basis for standing, … instead, it takes an invasion of one's own rights to create standing."). Although parents can obtain

3

standing based on their right to direct the religious upbringing of their children, that right ceases when the child reaches the age of majority. Dkt. 65, pp. 15-16. As this Court has already held:

> The Court has not been able to identify any case in which a parent of an adult child has been able to assert claims alleging interference with that child's religious upbringing. And at least one circuit has said that parents only have "the religious freedom . . . to control the religious upbringing and training of their minor children." This background -- along with various courts' reluctance "to extend the constitutional protections afforded the parent-child relationship to cases involving adult children" -- convinces the Court that a parent may not pursue claims alleging interference with a child's religious education once that child reaches the age of majority. Therefore, though the Court determines that Darryl has standing as a parent under both the Establishment and Free Exercise clauses, he has standing only to the extent his claims involve events that took place before his son's eighteenth birthday. *Id.* (citations omitted).

In the instant case, Darryl bases his claim on Amontae being taught the practice of TM as part of the Quiet Time program at Bogan High School. Dkt. 89, ¶¶ 3, 4, 15-17, 29-58; *see also,* Dkt. 155, p. 2. As detailed in Defendants' Opposition to Certify a Student Class, not all students in the Quiet Time program learned or practiced TM. Rather, during the two 15-minute Quiet Time periods in the school day, students who learned TM could engage in the practice if they wished, and students who had not learned TM would engage in some other quiet activity such as reading a book. Ex. 5, pp. 33-35:15; 70:9-77:1; Ex. 7, pp. 71:17-72:3; Exs. 9, 38, 39. Amontae participated in Quiet Time his junior year of high school during 2017-2018 by engaging in other such quiet activities but did not learn or practice TM during that school year. Ex. 11, pp. 67:13-68:24; 103:19-104:2; Exs. 12, 13.

Amontae turned 18 years old on ▬▬▬▬▬▬▬▬. Ex. 11, p. 92:9-14. On October 4, 2018, after he had attained the age of majority, Amontae signed a consent form and volunteered to learn TM as part of the Quiet Time program during his senior year. Ex. 11, pp. 85:8-86:12; 90:23-92:21; Ex. 12. On October 15, 2018, after signing the consent form, Amontae had his first TM training session, and after completing the training, he would occasionally practice TM during the Quiet Time periods (about 25% of the time) until he stopped altogether in the spring of 2019. Ex. 11, pp. 103:23-104:2; 143:16-145:5. Since Amontae had reached the age of majority *before* he even volunteered to learn (and

4

actually learned) TM, Darryl does not have standing to sue in this case. Dkt. 65, p. 16. For this reason alone, Darryl's motion should be denied, and he should be dismissed from this case.

## II. DARRYL CANNOT SATISFY THE REQUIREMENTS FOR CLASS CERTIFICATION.

Plaintiff's motion for class certification is governed by Fed. R. Civ. P. 23 which provides this Court with broad discretion to refuse to certify a class. *Marical v. Coronet Insurance Company*, 880 F.2d 954, 957 (7th Cir. 1989). Under Rule 23, a plaintiff seeking class certification bears the burden of proving the action satisfies the four prerequisites of Rule 23(a) and one section of Rule 23(b). *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984). The standards for class certification under both subsections of Rule 23 are set forth in Defendants' Opposition to Certify a Student Class and are incorporated by reference here.

### A. Darryl's Class Definition Is Overly Broad.

A prerequisite to class certification is that the class be sufficiently defined so it is identifiable. *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006). Proper definition is crucial because: (1) it allows the court and the parties to anticipate the burdens the case will impose on them, and (2) it ensures that the suit will benefit only deserving individuals. *Martinez v. Haleas*, 2009 U.S. Dist. LEXIS 78974, *7-8 (N.D. Ill. 2009). Certification should be denied if the court is required to conduct individual inquiries as to whether each potential class member falls within the class. *Id.*

Here, Darryl attempts to bring suit on behalf of a "parent class" that is defined, in part, as: "Parents . . . for any student in Class 1 [the Student Class] during their minority." Dkt. 155, p. 3. As explained in Defendants' Opposition to Motion to Certify a Student Class, a class definition that encompasses all students who participated in Quiet Time improperly includes those who never learned or practiced TM, and thus, were not harmed. *See Cleary v. Phillip Morris*, 265 F.R.D. 289, 293 (N.D. Ill. 2010) (noting that class was "defined so broadly that it is likely to include persons who suffered no detriment at all."). Darryl's proposed parent class suffers from the same fatal defect – it includes untold

numbers of parents whose direction of their children's religious upbringing was unaffected because their children/students were never instructed in TM.

Moreover, the parent class definition does not include sufficiently objective criteria. *See, Briscoe v. Health Care Serv.*, 337 F.R.D. 158, 164 (N.D. Ill. 2020) ("Ascertainability recognizes that plaintiffs must define a class clearly and based on objective criteria."). Darryl's "parent class" improperly includes "grandparent(s), great-grandparent(s) or adult sibling(s) of any student in Class 1 provided that the minor student regularly resided with such [person] ..." and "no parent or guardian was regularly part of the household" Dkt. 155, p. 3; *See, Alber v. Ill. Dep. Health*, 786 F.Supp. 1340, 1353 (N.D. Ill. 1992) (Siblings lack standing under §1983 to sue for First Amendment damages). Further, the meaning of "regularly resided" is vague and requires individualized inquiries to determine who meets these criteria and ascertain the identity of class members. *Hernandez v. Midland Credit Mgmt.*, 2017 U.S. Dist. LEXIS 114735, *7-8 (N. D. Ill. 2017) (A proposed class cannot be amorphous or imprecise.). Darryl's class definition also extends back to 2015 which is beyond the two-year statute of limitations for the putative class members' § 1983 claim. (*see,* 735 ILCS 5/13-202).[3]

**B.     Darryl Cannot Satisfy the Requirements of Rule 23(a).**

**1.     Darryl cannot satisfy the commonality requirement.**

The United States Supreme Court has explained the commonality prong as follows:

> What matters to class certification is not the raising of common questions -- even in droves -- but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

---

[3] Adding to the vague and imprecise nature of his class definition, Darryl appears to provide each parent with multiple, separate, rights of recovery depending upon how many of their children are in the student class. (Dkt. 155, p. 3). But parents must sue under § 1983 for violation of their *own* constitutional rights that directly affect them – i.e., *their* right to direct the religious upbringing of their children – not derivatively on behalf of each child/student who claims to have suffered harm. *Fleischfresser v. Dirs. of Sch. Dist. 200*, 15 F.3d 680, 683 (7th Cir. 1994). Darryl's class definition that double-counts parent class members based upon the number of their children who are in the student class is not only vague and confusing, but also, contrary to law.

Thus "superficial common questions -- like whether each class member shares a characteristic or suffered a violation of the same provision of law -- are not enough to establish commonality." *Briscoe*, 337 F.R.D. at 162-63. Instead, to satisfy commonality, a plaintiff must demonstrate the class members have suffered the same injury. *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012).

Instead of identifying common issues, Darryl lists factors (not questions) that are irrelevant to the question of liability. For example, Darryl alleges the parents generally had "poverty" in common and meditation purportedly deprived students of two-and-one-half hours of instructional or study time every week. Dkt. 155, p. 6. Not only is no evidence supplied for these statements, but also, these supposed harms are wholly unrelated to Darryl's purported claims or the class definition. In fact, Darryl supplies no citation to anything in the record to support his claims of "commonalities" all parents and students supposedly shared. Dkt.155, pp. 5-7. Moreover, these purported "commonalities" are nothing more than gross distortions of the evidence. *See infra*, Section II(B)(3).

The principal defect in Darryl's attempt to satisfy commonality lies in what is absent from his common questions: Darryl fails to ask whether TM, as an optional part of the Quiet Time program, infringed on the proposed class members' right to dictate their minor children's religious upbringing. Even if he had, Darryl cannot demonstrate the answer to this question could be proven on a class-wide basis. Indeed, the answer to this question cannot be reached without the need for significant, individual inquiries, of both *the parents and their children*, including but not limited to: (i) whether the parent's child was trained in TM; (ii) whether the child actually practiced TM; (iii) whether the parent consented; (iv) whether the child had reached the age of majority and consented; and (v) whether practicing TM interfered with a particular parent's desired religious upbringing for his or her child, to name just a few of the necessary inquiries. Darryl takes none of this into account. He cannot satisfy commonality when his defined class suffers from these types of glaring defects.

7

Moreover, Darryl's motion should also be denied because he fails to identify a question that is capable of class-wide resolution. Darryl's proposed class of parents depends entirely on whether their children fall into a completely separate student class. As discussed in Defendants' Opposition to Motion to Certify a Class of Students and adopted here, commonality does not exist in the students' claims. The students' claims do not present common *answers* to questions pertaining to their religious beliefs, whether their religious beliefs (if they had them) were burdened by learning TM; or whether TM caused them any harm, specifically, emotional distress which is the harm that is being alleged here. The parents, who did not experience Quiet Time or TM training, do not have any common contentions capable of class-wide resolution and cannot rely solely on parentage to certify a class. Darryl's arguments fall short from showing there are common answers to the issues presented in this case regarding parents' right to direct the religious upbringing of their children or whether parents have sustained a common injury.

### 2. Darryl cannot satisfy the typicality requirement.

It is well-settled that "[t]he presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class[.]" *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011). "To negate the typicality of the representative's claim, it is only necessary that the defense be unique, arguable and likely to usurp a significant portion of the litigant's time and energy." *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 334 (N.D. Ill. 1982). Here, Darryl's lack of standing is a strong defense to his claim making him atypical of the purported class he has defined; namely, Darryl has no standing to pursue this case because his son, Amontae, reached the age of majority prior to ever learning TM at school.

Even if Darryl had standing, his claim seeking redress for violation of his constitutional right to direct the religious upbringing of Amontae remains atypical not only because his child was an adult when he learned TM, but also, because Amontae claims to have had unique, extreme, experiences

8

involving TM which set his claims apart from the other students. As set forth in Defendants' Opposition to Motion to Certify a Student Class, which is incorporated here, Darryl alleges TM caused Amontae to become gothic, violent, and feel like he was possessed by demons. Dkt. 89-2, ¶6. There is no evidence any other students or parents are claiming such unique, unusual harm from learning TM. Further, as discussed in the adequacy section of this brief, *infra*, the truth is that, long before he ever learned TM, ████████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. 11, pp. 160-97, 208-223; Ex. 26, Ex. 40. Darryl's claims are also atypical because Amontae waived his only remaining claim for damages, thus mooting his claims and removing him from the proposed student class (upon which the parent class definition depends). All of these unique factual defenses undermine the typicality of Darryl's claims. *See*, *Oshana*, 472 F.3d at 514 (finding presence of specific unique factual defenses destroyed typicality).

        **3.**     **Darryl and his counsel cannot satisfy the adequacy requirement.**

Under Rule 23(a)(4), the adequacy of representation is comprised of two parts: (i) the adequacy of the named plaintiff's counsel and (ii) the adequacy of the class representative to protect the class members. *Retired Chicago Police Ass'n. v. City of Chicago*, 7 F.3d 884, 598 (7th Cir. 1993). Taking adequacy of counsel first, Defendants' Opposition to Amontae's Motion lists numerous reasons why Plaintiffs' counsel in this case is not adequate, which are incorporated herein by reference. These reasons include counsel's failure to communicate settlement offers and use of a Legal Service Agreement that creates ethical problems. Counsel also fails to provide any details regarding his background or experience to support the motion for a parent class, and what little he has provided with his motion for a student class demonstrates he has no class action experience. Dkt. 156-10.

Additionally, Darryl's motion contains primarily arguments and assertions, seemingly lifted directly from his Complaint, untethered by citation to authority or the record. Indeed, these self-

9

serving and conclusory remarks on the evidence are not only unsupported, but also, contradicted by the evidence obtained in discovery. For example, Darryl contends students participating in TM were required to take a "oath of secrecy." Dkt. 155, p. 3. There is no evidence of an "oath of secrecy." Rather, the instructors with whom DLF contracted to teach TM would request students keep their mantra private, so it would be more effective when used in the practice of TM. Ex. 7, pp. 16:20-17:20; 66-70. Darryl also asserts these instructors gave students a mantra they drew from a select pool of Sanskrit words to reference and honor Hindu deities. Dkt. 155, p. 2. Again, there is no such evidence. Rather, the mantras were given to the students as a meaningless sound, the students were told the mantra was meaningless, and the mantra was provided to the student verbally only – never as a word or in written form. Ex. 5, p.8; Ex. 7, pp. 67:21-23; 69-70; Ex. 11, pp. 118:17-119:11.

Darryl's motion also claims the students underwent an "initiation ceremony" and implies ceremonial Hindu terms were used such as "Puja" and "Guru Dev;" there was some sort of use of, or association with, religious robes; and an imparting of an understanding that "Guru Dev" meant "Divine Teacher." Dkt. 155, pp. 2, 5-6. The evidence however, demonstrates the words "Puja" and "Guru Dev" were not used with CPS students; the instructor wore regular street clothes; the instructor told the student that he/she was going to observe the instructor perform an expression of gratitude to prior TM teachers before teaching the student; the expression of gratitude was done only once and lasted about 3 minutes; the instructor repeated some words the instructor does not consider religious, and in any event, were never translated for the student; the student was never told or taught any belief system associated with TM; the student was taught TM as a simple technique to use to help reduce toxic stress; and the student was told TM was not religious. Ex. 5, pp. 9-10, 66-69; Ex. 7, pp. 56-61; Ex. 10, pp. 142-45; Ex. 11, pp. 111:24-116, 119:4-11, 124:10-16; Ex. 31, pp. 256:22-257:23.

Even when the brief cites to evidence, it is misleading. Counsel attaches as Exhibit C a bell schedule that shows Quiet Time was held twice a day for 15 minutes in CPS schools and then asserts

without support "each parent had one or more child required to meditate daily." Dkt. 155, p. 6. The bell schedule shows nothing more than when Quiet Time was held during the school day. As explained above, students could either meditate (if they had volunteered to learn) during the Quiet Time periods or engage in another quiet activity. Ex. 5, pp. 16:23-17:12; 75:17-76:21. Ex. 7, pp. 71:17-72:3; 73:20-74:2; Ex. 10, p. 145:6-24. Learning and participation in TM was optional, and those who did not learn TM (or those that had learned TM but simply did not want to practice it that day) did not meditate during the Quiet Time periods as Plaintiffs' brief continues to misrepresent. Ex. 5, pp. 16:23-17:12; 75:17-76:21; Ex. 7, pp. 71:17-72:3; 73:20-74:2; Ex. 10, p. 145:6-24; Ex. 11, pp. 102:11-23; Ex. 12.

Further, Darryl's counsel attaches as Exhibit F a consent form that he represents to be a governmental advertisement and endorsement for CPS Quiet Time. Dkt. 155, p. 10. However, as noted on Exhibit F itself, it is a form that was used with parents for a program in *New York City* schools; not CPS schools. Ex. 36, pp. 59-61; Ex. 37. Furthermore, Exhibit F was used in New York for parental consent to students being part of a research study *following* their participation in the New York program; not to learn TM in the first instance. *Id.* The permission form and informational packet sent home to the CPS parents of Bogan High School students *before* students volunteered to learn TM are completely different than Exhibit F and were consistent with the process by which Bogan High School obtained parent consent for other student activities. Ex. 5, pp. 70-75; Exs. 9, 38, 39.

Just as his counsel, Darryl is also inadequate to represent the proposed parent class. In every Complaint filed, he has attached a sworn Declaration stating TM caused Amontae to start wearing goth clothing, paint his fingernails black, listen to dark music, start to hide old, partially eaten food in his room, become violent and punch holes in the wall, feel as if he was "possessed" by some "wicked" spirit, engage in spiritual chants, and have negative spiritual influences. Dkt. 1-5; 35-4; 89-2, ¶¶ 6,7. However, as set forth in Defendants' Opposition to Motion to Certify a Student Class, ████

11

██████████████████████████████████████████████████████████████

Ex. 11, pp. 88-90; 160-63; 185-93; 204-05; 208-09; 217-223; ████████████

████████████████████████████████████████████████████

Darryl's brief in support of his motion for class certification which lacks citation to legal authority or to evidence in the record is sufficient grounds to find Darryl and his counsel inadequate. *See, Ramirez v. Midland Funding, LLC*, 2020 U.S. Dist. LEXIS 161811, *9 (N.D. Ill. 2020). Even more troubling, however, is that it strains credibility to believe Darryl did not know of Amontae's behavior before making false statements about it in his Declaration attached to his pleadings. In any event, Darryl and his counsel certainly *did* know these misrepresentations existed after Amontae gave his deposition; yet they both chose to reattach Darryl's Declaration including false sworn statements as an exhibit to Darryl's motion for class certification. Dkt. 155, pp. 8-9; Dkt. 155-7.

The Seventh Circuit Court of Appeals has instructed "[m]isconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 917-18 (7th Cir. 2011). Similarly, a named plaintiff with serious credibility problems may not be an adequate class representative. *Id.* When both counsel and the class representative demonstrate serious credibility problems and make false misrepresentations, they should both be found to be inadequate. *See, Crissen v. Gupta*, 2014 U.S. Dist. LEXIS 114924, *25-22 (S.D. Ind. 2014); *Brider v. Nationwide Credit, Inc.*, 1998 U.S. Dist. LEXIS 16532, *7 (N.D. Ill. 1998) (Incredulous prior testimony by a class representative is "antagonistic to the class" and poses a problem for a class when the case goes to trial); *Kaplan v. Pomerantz*, 132 F.R.D. 504,

---

[4]Darryl's statements in his Declaration that prior to learning TM Amontae "had a normal outward appearance, was lighthearted, enjoyed spending time with his friends, and could always hold nice conversations with his peers and adults" is also contradicted by ████████████████████████████████████████
████████████ Dkt. 89-2, ¶ 6; Ex. 11, pp. 166-183; Ex. 40.

12

510 (N.D. Ill. 1990) (Class representative who "evince[s] a willingness to give intentionally false and misleading testimony in an effort to further his interests in this litigation" is not adequate).

### C. Darryl Cannot Satisfy the Requirements Of Rules 23(b)(1) And 23(b)(3).

Darryl's inability to satisfy Rule 23(a)'s requirements alone is sufficient to deny class certification. However, he also fails to satisfy any one of the requirements under Rule 23(b), which is also necessary for class certification. Specifically, Darryl cannot meet the requirements under the two sections he contends apply here, Rules 23(b)(1) and 23(b)(3).

#### 1. Darryl cannot satisfy the requirements of Rule 23(b)(1).

Plaintiff argues that a class should be certified under Rule 23(b)(1)(A), and he confirms that he is not seeking certification under Rule 23(b)(1)(B). Dkt. 155, pp. 13-14. The reasons neither plaintiff can satisfy the requirements of Rule 23(b)(1) are set forth in defendants' opposition to Motion to Certify a Student Class and are incorporated here by reference.

#### 2. Darryl cannot satisfy the requirements of Rule 23(b)(3).

Where, as here, a plaintiff seeks certification of a damages class under Rule 23(b), the court must also find that common questions of law or fact predominate over individualized questions, and that the class action device is a superior method to adjudicate the case. *McFields v. Dart*, 982 F.3d 511, 515 (7th Cir. 2020). Consideration of these questions begins with the elements of the underlying cause of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Here, Darryl's sole remaining claim in this case is for emotional distress damages under 42 U.S.C. § 1983. Dkt. 65, p. 45; Dkt. 81, p. 14; Dkt. 89, ¶ 125. "To succeed in a § 1983 suit, a plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation caused the plaintiff injury or damages." *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

The same individualized inquires that preclude certification of the Free Exercise and Establishment Clause claims brought by the student class under § 1983 similarly preclude certification

of a parent class. As discussed in Defendants' Opposition to Motion to Certify a Student Class, which is adopted here, the core of both Plaintiffs' § 1983 claims in this case center on individualized issues such as whether a parent's child engaged in TM during Quiet Time, the parent's and child's religious beliefs and upbringing, and whether the child's participation in TM was "coercive."

Moreover, where causation, or the "fact of damages," cannot be established for every class member through proof common to the class, a plaintiff cannot satisfy the predominance requirement. *Reed v. Advocate Health Care*, 268 F.R.D. 573, 582 (N.D. Ill. 2009); *see also, Harnish v. Wiedner University School of Law*, 833 F.3d 298, 305-06 (3d Cir. 2016) (affirming denial of class certification under Rule 23(b)(3) because plaintiff was unable to demonstrate that the "fact of damage" – i.e., whether all class members had suffered some harm traceable to the defendant's conduct -- could be proven on a classwide basis). Here, Darryl seeks relief on behalf of a class of parents who allegedly suffered emotional distress due to interference with their right to direct their child's religious upbringing due to an exposure to TM in CPS schools. Dkt. 155, p.3. A determination of whether a student's learning TM caused her parents emotional distress and interfered with the parents' direction of the student's religious upbringing are individualized issues that lie at the core of this case, and thus, predominate. *See*, *Smith v. Sheriff of Cook Cty.*, 2008 U.S. Dist. LEXIS 60248, *3-4 (N.D. Ill. 2008) (denying class certification of § 1983 claim because "issues of individual causation and damages will likely encompass the vast majority of the time and resources necessary to judge plaintiffs' claims."); *Jones v. BRG Sports, Inc.*, 2019 U.S. Dist. LEXIS 128493, *17-18 (N.D. Ill. 2019) (denying certification where individualized questions of causation and injury lie inextricably at the heart of the plaintiffs' claims).

Additionally, to satisfy the predominance requirement, a plaintiff must also establish that damages are capable of measurement on a class-wide basis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013). Under *Comcast*, this Court must determine "if there is a class-wide method for proving damages, and if not, whether individual damage determinations will overwhelm the common questions

14

on liability and impact." *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 48792, *168 (N.D. Ill. 2017). Here, the existence, nature, extent, and monetary value (if any) of any parent's emotional injury, in addition to whether it was caused by the student learning to practice TM, is another highly individualized question that predominates in this litigation. *See*, *Aiello v. Providian Financial Corp.*, 239 F.3d 876, 881 (7th Cir. 2001); *Hyderi v. Washington Mut. Bank, F.A.*, 235 F.R.D. 390, 402 (N.D. Ill. 2006); *D.C. v. City of San Diego*, 2017 U.S. Dist. LEXIS 185548, * 46 (S.D. Cal. Nov. 7, 2017) ("[W]hile it is often true that damages calculations cannot alone defeat class certification, that principle may not be applicable where the emotional distress damages to every class member will depend upon individual incidents.").

Likewise, the superiority requirement is not satisfied because determining whether learning and practicing TM actually caused students emotional harm that interfered with parental rights to direct their religious education, and if so, what the extent (if any) of the interference was, transforms this class action into an unmanageable proceeding dominated by individual questions. *Thomas v. Arrow Fin. Servs., LLC,* 2006 U.S. Dist. LEXIS 63156, *15 (N.D. Ill. Aug. 17, 2006).

## CONCLUSION

For each of the above reasons, plaintiff Darryl Williams' Motion for Class Certification should be denied. Darryl should also be dismissed from the case for a lack of standing.

Dated: May 2, 2022                                              Respectfully submitted,

/s/ *James J. Sipchen*                                          /s/ *Elizabeth K. Barton*
James J. Sipchen                                                Elizabeth K. Barton
PRETZEL & STOUFFER, CHARTERED                                   Kaitlin T. Salisbury
One S. Wacker Drive- Suite 2500                                 Christina L. Rosenberg
Chicago, IL 60606-4673                                          Board of Education of the City of Chicago
(312) 578-7422                                                  1 N. Dearborn St., Suite 900
jsipchen@pretzel-stouffer.com                                   Chicago, Illinois 60602
*Counsel for The David Lynch Foundation*                        (312) 553-1700
                                                                ekbarton@cps.edu
                                                                ktsalisbury@cps.edu
                                                                crosenberg@cps.edu
                                                                *Counsel for Board of Education of the City of Chicago*

15