IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMONTAE WILLIAMS,<br>individually and as a representative<br>for all similarly situated persons;<br>and DARRYL WILLIAMS,<br>individually and as a representative<br>for all similarly situated persons,<br><br>        Plaintiffs,<br><br>        vs.<br><br>BOARD OF EDUCATION OF<br>THE CITY OF CHICAGO;<br>THE DAVID LYNCH FOUNDATION;<br>and the UNIVERSITY OF CHICAGO,<br><br>        Defendants. | Case No. 20 C 4540 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

      Amontae and Darryl Williams[1] have sued the Board of Education of the City of Chicago (the Board), the David Lynch Foundation (the Foundation), and the University of Chicago (the University) on behalf of a putative class for violations of the Establishment Clause of the federal constitution and the Illinois Religious Freedom Restoration Act. In earlier decisions, this Court granted the defendants' motion to dismiss the plaintiffs' amended claim in part and the plaintiffs' motion for leave to amend their complaint. *See Separation of Hinduism From Our Schs. v. Chicago Pub. Schs.*,

---

[1] The Court will refer to Amontae Williams and Darryl Williams by their first names to avoid confusion.

*City of Chicago Sch. Dist. #299*, No. 20 C 4540, 2021 WL 2036536 (N.D. Ill. May 21, 2021); *Separation of Hinduism From Our Schools v. Chicago Public Schools*, No. 20 C 4540, 2021 WL 3633939 (N.D. Ill. Aug. 17, 2021). The plaintiffs now move to certify various classes under Federal Rules of Civil Procedure 23(b)(1) and 23(b)(3). The Court denies the motion for the reasons stated below.

## Background

The party seeking class certification has the burden of establishing by a preponderance of the evidence that certification is proper. *Priddy v. Health Care Serv. Corp.,* 870 F.3d 657, 660 (7th Cir. 2017). In assessing whether the movant has met this burden, the district court need not accept the allegations in the complaint as true. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). The court should instead "make whatever factual and legal inquiries [that] are necessary under Rule 23." *Id.* at 676.

The Court takes the following facts from its prior order on the defendants' motion to dismiss, the second amended complaint, and the parties' class certification briefing. A more detailed recounting of the plaintiffs' allegations can be found in the Court's May 21, 2021 decision on the defendants' motion to dismiss. *See Separation of Hinduism*, 2021 WL 2036536.

The named plaintiffs are Amontae Williams, who was a student at Bogan Computer Technical High School in Chicago from fall 2017 until he graduated in spring 2019, and his father Darryl Williams. Bogan was one of eight schools that implemented the Quiet Time program between 2015 and 2019.

The defendants were involved in implementing Quiet Time in Bogan and other

2

Chicago schools. The Foundation created the Quiet Time program, the University conducted a research study evaluating its effects, and the Board permitted it to be incorporated into the schools' schedules.

Quiet Time involved two fifteen-minute periods of quiet activity during each school day, and some participating students could learn Transcendental Meditation as part of the program. Only those students who learned Transcendental Meditation and participated in the training were present for a "Puja" initiation ceremony. During the initiation, instructors placed items in front of a painting of an influential teacher of Transcendental Meditation and spoke in Sanskrit for approximately four minutes. The instructors also gave students a "mantra" and instructed them to repeat it while meditating. The parties dispute whether the mantra was a meaningless sound or a Sanskrit word of religious significance. Students who did not learn Transcendental Meditation were neither present for the ceremony nor given a mantra.

On occasion, Transcendental Meditation instructors would come to classrooms and lead the students through a meditation. Leading a meditation involved telling the students to think of their mantra and ringing a bell to let students know when to start or stop meditating. Students who did not learn Transcendental Meditation were in the classrooms during the instructor-led meditations, but they were not required to meditate and could engage in other quiet activities during that time. Chicago Public Schools teachers would sometimes lead the meditations when instructors were not present.

Amontae began participating in Quiet Time in October 2017, but no students at Bogan meditated until Transcendental Meditation instructors came to the school during the 2018-19 academic year. Amontae was not present for any initiation ceremonies or

3

instructor-led meditations while he was a minor.  He turned eighteen in September 2018, signed a consent form in early October, and began learning Transcendental Meditation in mid-October.  After completing four training sessions, Amontae sporadically practiced Transcendental Meditation during Quiet Time until spring 2019.  Amontae is now twenty-one years old.

The plaintiffs retained counsel and brought this suit in October 2020.  The legal services agreement between Amontae and his counsel states that Amontae "grants the Steering Committee authority to make final litigation decisions on behalf of the Client."  Defs.' Combined Opp'n to the Mot. for Class Certification of Pl. Amontae Williams, Ex. Ex. 24 at 3 (dkt. no. 189-2).  The agreement also states that the Steering Committee is "the Client's primary avenue of communication with the [law firm]" and that the committee will consist of two of Amontae's attorneys—one of whom is the proposed class counsel—and "other adult followers of Jesus who are parents of children in the [Chicago Public Schools] or otherwise have a stake in the litigation."  *Id.*  There is an option in the agreement for the client to join the Steering Committee, but Amontae did not select that option.  *Id.* at 4.  Amontae testified during his deposition that he was not a member of the committee, did not participate in its decisions, did not know who was on the committee other than his counsel, and did not know how often the committee made final litigation decisions for him.  In response to defense counsel's questions during the deposition, proposed class counsel instructed Amontae, "[D]on't answer questions about what the committee has decided for you."  *Id.*, Ex. 11, at 269:4–5.

The legal services agreement also states that it is the policy and practice of the plaintiffs' counsel "to recommend denial of any offer of settlement that does not include

4

recovery which the Firm considers adequate of the attorney's fees, costs, and expenses the Firm has incurred." *Id.*, Ex. 24 at 3. During his deposition, Amontae testified that he understood the clause to mean his counsel would recommend denial of any settlement offers that lacked sufficient attorneys' fees and costs—including offers that are in the best interests of Amontae and his proposed classes.

Plaintiffs move to certify two classes. The first proposed class includes all students who participated in the Quiet Time program between 2015 and 2019; the second includes all parents, legal guardians, or other persons acting in *loco parentis* for any student who participated in Quiet Time while a minor. Plaintiffs also propose two subclasses within the proposed student class: (1) all students who participated in Transcendental Meditation training, and (2) all students who participated in the Quiet Time program but not Transcendental Meditation training.

## Discussion

At the class certification stage, the Court does not "adjudicate th[e] case," but rather "select[s] the method best suited to adjudication of the controversy fairly and efficiently." *Amgen v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). In order for the case to proceed as a class action, the Williamses must show that their proposed classes satisfy all the requirements of Rule 23, which sets out the criteria for class certification. *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017).

First, under Rule 23(a), a putative class must satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). Rule 23(a) requires the class to be so numerous that joinder of all members is impracticable; there are common questions of law or fact; the

5

representatives' claims are typical of those of the class; and the representatives fairly and adequately protect the interests of the class.

Second, the proposed class must fall within one of the three categories in Rule 23(b). *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011). The plaintiffs argue for certification under Rule 23(b)(1)(A) and Rule 23(b)(3). Rule 23(b)(1)(A) applies when there is a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Rule 23(b)(3) requires finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**A.    Amontae's proposed classes**

The plaintiffs propose a class of all students who participated in the Quiet Time program—and in the alternative, various subclasses—with Amontae as the class representative. As a result, even if these classes satisfy the other requirements of Rule 23(a) or Rule 23(b)(3), the motion for class certification fails if Amontae cannot adequately represent the proposed classes. *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 585 (7th Cir. 2020) ("It is well-established that a district court must find that 'the representative parties will fairly and adequately protect the interests of the class' before it may allow a case to proceed" as a class action.) (quoting Fed. R. Civ. P. 23(a)).

"[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police*

*Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (internal quotation marks and citation omitted). Among other things, "[a] named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011); see also *Davidson v. Citizens Gas & Coke Utility*, 238 F.R.D. 225, 229 (S.D. Ind. 2006) ("[P]ersonal characteristics, such as the credibility and integrity of a putative class representative, have a direct bearing on their ability to adequately represent absent members of the class.").

The defendants contend that Amontae is not an adequate class representative for three reasons: his lack of credibility, his purportedly minimal knowledge about the case, and his lack of control over the litigation. The concerns about Amontae's credibility and knowledge regarding the litigation are not enough to render him inadequate, as that would require "admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *CE Design*, 637 F.3d at 728. The defendants' arguments about credibility are based on discrepancies between Amontae's deposition testimony and his other proffered evidence, which largely concern changes in his religious beliefs, behavior, and feelings about Transcendental Meditation. These inconsistencies are unlikely to be a significant factor in litigation at the class level because they would only impact Amontae's individual damages determinations and thus would not undermine his credibility severely enough to distract from the other aspects of the case. Amontae's lack of familiarity with every aspect of the case or the specific reasons for suing each defendant are similarly insufficient to establish inadequacy, as

he demonstrated a basic understanding of the purpose of the lawsuit and his proposed classes during his deposition. One cannot expect a plaintiff, either a class representative or an individual plaintiff, to know details about evidence, legal theories, or strategy; that's why people hire lawyers.

Amontae's inability to make final decisions regarding this litigation, however, precludes him from adequately representing his proposed classes. Adequacy is not that high a bar, but a class representative should be "able to monitor the conduct of counsel, who as a practical matter are the class's real champions." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Other courts in this district have concluded that named plaintiffs "must be trustworthy enough to protect the interests of the class" and "figurehead plaintiffs are not permitted," and the Court agrees that a putative class representative who cannot monitor counsel is "plainly insufficient—just a placeholder for the attorneys driving the case." *Pope v. Harvard Bancshares, Inc.*, 240 F.R.D. 383, 390 (N.D. Ill. 2006); *Physicians Healthsource, Inc. v. Allscripts Health Sols. Inc.*, 254 F. Supp. 3d 1007, 1024 (N.D. Ill. 2017) ("A plaintiff who seeks to be the class representative cannot simply shift its duties to class counsel . . . . And taking an active and honest and attentive and [sic] role in discovery is one of the hallmarks of an otherwise adequate class representative"); *see also Pruitt v. Personal Staffing Group, LLC*, 2021 WL 197399, at *8 (N.D. Ill. Jan. 20, 2021) ("This is the crux of Plaintiffs' problem: they did not know what was happening in the litigation, because they were *not involved in the litigation*, because they *surrendered their responsibilities* in the litigation to proposed class counsel") (emphasis added).

The plaintiffs are unable to establish by a preponderance of the evidence that

8

Amontae is adequate in this regard. The legal services agreement between him and his counsel is clear: Amontae has surrendered his responsibility to make final litigation decisions to a "Steering Committee" composed of proposed class counsel and other individuals unknown to the Court, *not* including Amontae himself. Amontae's lack of any knowledge about the decisions, operations, or membership of the committee to which he has delegated control of the litigation further underscores his inability to take an "active and honest and attentive" role in the litigation or be more than just a "placeholder for the attorneys driving this case." *Physicians Healthsource*, 254 F. Supp. 3d at 1024. By excluding Amontae from the Steering Committee's membership while subjecting him to its decisions, the legal services agreement has impermissibly shifted his duties as named class plaintiff to his counsel, deprived him of any means of monitoring his counsel's conduct, and reduced him to little more than a figurehead.[2]

      The plaintiffs fail to meaningfully address this issue in their reply brief. They do not deny that the Steering Committee makes final litigation decisions but instead argue that Amontae retains ultimate authority because Illinois law permits him to discharge his counsel. This logic is flawed, however, as it would mean that every named plaintiff—no matter their involvement in the litigation or lack thereof—can be an adequate class representative simply by being able to terminate or change attorneys. No court has

---

[2] Plaintiffs' counsel's membership on the Steering Committee is also concerning, as the agreement also states that counsel will recommend—to the same committee which he leads—the denial of any settlement offer that lacks "adequate" attorneys' fees and costs. Although this conduct is unlikely to "jeopardize[] the court's ability to reach a just and proper outcome in the case" because any settlement would require approval by the Court, *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 499 (7th Cir. 2013), plaintiffs' counsel is reminded that he cannot contract his way out of his obligations under the Rules of Professional Conduct.

adopted such an interpretation. It would effectively render Rule 23's adequacy requirement a dead letter, and courts have emphasized the importance of the named plaintiff's involvement in the litigation. *See, e.g., CE Design*, 637 F.3d 721; *Physicians Healthsource*, 254 F. Supp. 3d 1007; *Pope*, 240 F.R.D. 383. Given that the plaintiffs' counsel has so little trust in his own client's abilities that he created a committee to remove decision-making authority from that client, there is no basis for the Court to find the named plaintiff "trustworthy enough to protect the interests of the class." *Pope*, 240 F.R.D. at 390.

For all of these reasons, the Court concludes that Amontae is an inadequate class representative. The Court denies his motion for class certification on this basis and thus need not address whether the proposed student classes satisfy the other requirements of Rule 23(a) or Rule 23(b).

**B.     Darryl's proposed class**

The Court denies Darryl's motion for class certification, as it turns out that Darryl lacks standing to bring his claim in this case. "Before a class is certified, . . . the named plaintiff must have standing, because at that stage no one else has a legally protected interest in maintaining the suit." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 676 (7th Cir. 2009). As the Court acknowledged in ruling on the defendants' motion to dismiss, "parents have standing as a result of their right to direct the religious training of their children" under both the Establishment Clause and the Free Exercise Clause. *Fleischfresser v. Dirs. of Sch. Dist. 200*, 15 F.3d 680, 683 (7th Cir. 1994) (citing cases). But having found no case that extends that parental right to adult children, the Court concluded that Darryl has standing "only to the extent his claims involve events that

took place before his son's eighteenth birthday." *See Separation of Hinduism*, 2021 WL 2036536, at *7.

The problem here is that none of the events giving rise to Darryl's claim occurred before Amontae's eighteenth birthday. The parties do not dispute that when Amontae began learning Transcendental Meditation, he was already a legal adult. During his deposition, Amontae testified that he was present for an initiation ceremony in October 2018, after he had turned eighteen a month earlier. He also stated that no one at his school was meditating in class during his junior year, when he was still a minor, and that the Transcendental Meditation instructors did not come to his school until the following year. Therefore, to the extent that Darryl's claim is based on either the Transcendental Meditation initiation or instructor-led meditation, it must be dismissed, and his motion for class certification must be denied for lack of standing.

Darryl contends that he has standing despite these facts, but none of his arguments are persuasive. His first contention—that his parental rights were violated when other students at other schools witnessed the Transcendental Meditation initiation or instructor-led meditation—lacks any legal support, as does his argument that Amontae was coerced as a minor because the defendants gave other students food and snacks. Although courts have recognized that students are vulnerable to coercion, it was in the context of graduations or football games where attending the event with the religious component was either mandatory or had great significance in a typical student's life. *See, e.g.*, *Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840 (7th Cir. 2012) (*en banc*); *Santa Fe Ind. Sch. Dist. v. Doe*, 530 U.S. 290 (2000). Based on the available evidence, the Court cannot say that offering pizza and snacks to encourage

11

student participation in optional activities is equivalent to holding a graduation ceremony in a church or permitting student-led prayers at football games, and Darryl cites no legal authority supporting such an interpretation. Lastly, Darryl contends that he has a right to be informed about the origins and possible religious roots of any school program—including ones in which his child never participated as a minor—despite Seventh Circuit precedent to the contrary. See Crowley v. McKinney, 400 F.3d 965, 969 (7th Cir. 2005) ("It is one thing to say that parents have a right to enroll their children in a private school that will retain a degree of autonomy . . . . It is another thing to say that they have a constitutional right to school records, or to be playground monitors, or to attend school functions").

The Court therefore denies Darryl's motion for class certification and dismisses his section 1983 claim for lack of standing.

### Conclusion

For the foregoing reasons, the Court denies the plaintiffs' motions for class certification [dkt. nos. 155 & 156] and dismisses plaintiff Darryl Williams's section 1983 claim for lack of standing. The Court sets the case for a telephonic status hearing on September 22, 2022 at 8:35 a.m. for the purpose of setting a schedule for further proceedings, as well as a trial date. The parties are directed to confer regarding a schedule and are to submit a joint status report with a proposal (or separate proposals if they cannot agree) by no later than September 20, 2022.

```
                              _____
                                     MATTHEW F. KENNELLY
                                     United States District Judge
```

Date: September 13, 2022