**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| Amontae Williams, | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-04540 |
| | ) | |
| v. | ) | |
| | ) | The Honorable Matthew F. Kennelly |
| Board of Education of the City of Chicago, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT ON COUNTS I AND II AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................1

I.      MOTION TO DEEM FACTS ADMITTED AND TO STRIKE ...........................................1

        A.      Unsupported Or Inadmissible Statements Of Fact Should Be Stricken ......................1

        B.      Plaintiff's Submitted Affidavit Contain Inadmissible Evidence .....................................2

        C.      The Testimony Of Plaintiff's "Expert" Witnesses Should Be Disregarded .................3

II.     AMONTAE'S § 1983 CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT ..............3

        A.      Amontae Cannot Establish *Monell* Liability Against The Board ....................................4

        B.      Amontae Has Forfeited DLF's *Monell* Argument ...........................................................5

        C.      Amontae Cannot Establish Deprivation Of A Constitutional Right ............................6

        D.      Amontae Has Forfeited His Claim For Damages ...........................................................8

III.    THE UNIVERSITY AND DLF SHOULD BE DISMISSED AS PRIVATE ACTORS ......9

IV.     AMONTAE'S IRFRA CLAIM SHOULD BE DISMISSED ..................................................11

        A.      Damages Are Not Available Under IRFRA ....................................................................11

        B.      The Tort Immunity Act's Statute Of Limitations Bars Amontae's IRFRA Claim .....13

        C.      The Tort Immunity Act Further Bars Damages For Amontae's IRFRA Claim .........14

CONCLUSION ...................................................................................................................15

## TABLE OF AUTHORITIES

**Page**

### CASES

*Anderson v. Simon*,
217 F.3d 472 (7th Cir. 2000)....................................................................................................3

*Calhoun v. Ramsey*,
408 F.3d 375 (7th Cir. 2005)............................................................................................... 4, 5

*City of Boerne v. Flores*,
521 U.S. 507 (1997).................................................................................................................12

*Cooper v. Retrieval-Masters Credit Bureau, Inc.*,
2017 WL 2404952 (N.D. Ill. 2017)..........................................................................................6

*Craig v. City of Chicago*,
2011 WL 1196803 (N.D. Ill. 2011)........................................................................................10

*Cunningham v. Southlake Ctr. for Mental Health, Inc.*,
924 F.2d 106 (7th Cir. 1991)..................................................................................................10

*Dixon v. Chi. Bd. of Educ.*,
710 N.E.2d 112 (Ill. App. Ct. 1999) .......................................................................................14

*Evans v. Torres*,
1996 WL 5319 (N.D. Ill. Jan. 4, 1996) ...................................................................................10

*Gernetzke v. Kenosha Un. Sch. Dist. No. 1*,
274 F.3d 464 (7th Cir. 2001)....................................................................................................4

*Grant v. Trs. of Indiana Univ.*,
870 F.3d 562 (7th Cir. 2017)..................................................................................................11

*Great Divide Ins. Co. v. Linda Constr., Inc.*,
2022  WL 294760 (N.D. Ill. 2022)...........................................................................................1

*Harris v. Thompson*,
976 N.E.2d 999 (Ill. 2012) .....................................................................................................14

*Holdeman v. Consol. Rail Corp.*,
649 F. Supp. 1188 (N.D. Ind. 1986)........................................................................................11

*Horina v. Granite City*,
538 F.3d 624 (7th Cir. 2008)....................................................................................................8

*Ineichen v. Ameritech*,
   410 F.3d 956 (7th Cir. 2005)..................................................................2

*Iskander v. Vill. Of Forest Park*,
   690 F.2d 126 (7th Cir. 1982)..................................................................5

*J.K.J. v. Polk Cnty.*,
   960 F.3d 367 (7th Cir. 2020)..................................................................5

*Jaythan E. v. Bd. of Ed. of Sykuta*,
   219 F. Supp. 3d 840 (N.D. Ill. 2016) ......................................................4

*Judge v. Quinn*,
   612 F.3d 537 (7th Cir. 2010)..................................................................9

*KDC Foods, Inc. v. Gray, Plant, Mooty, Mooty, & Bennett, P.A.*,
   763 F.3d 743 (7th Cir. 2014)................................................................13

*Kennedy v. Bremerton Sch. Dist.*,
   142 S.Ct. 2407 (2022)........................................................................6, 8

*Killinger v. Johnson*,
   389 F.3d 765 (7th Cir. 2004)..................................................................4

*Kujawski v. Bd. Of Comm'rs of Bartholomew Cnty, Ind.*,
   183 F.3d 734 (7th Cir. 1999)...............................................................3, 4

*Laborers' Int'l Union of N. Am. v. Caruso*,
   197 F.3d 1195 (7th Cir. 1999) ............................................................5, 8

*Lewis v. CITGO Petroleum Corp.*,
   561 F.3d 698 (7th Cir. 2009)..................................................................3

*Linda Constr. Inc. v. Allied Waste Indus.*,
   2017 WL 1196889 (N.D. Ill. 2017)........................................................10

*Lord v. Beahm*,
   952 F.3d 902 (7th Cir. 2020)...............................................................3, 8

*Lynch v. Donnelly*,
   465 U.S. 668 (1984)..............................................................................6

*Malnak v. Yogi*,
   592 F.2d 197 (3d Cir. 1979)...............................................................7, 8

*Martinez v. Colvin*,
   2014 WL 1305067 (N.D. Ill. 2014)..........................................................9

*McClure v. Owens Corning Fiberglas Corp.*,
    188 Ill. 2d 102 (1999) ........................................................................................................11

*McCullogh v. Godley Park Dist.*,
    2011 WL 10468086 (Ill. App. Ct. 2011) ..........................................................................15

*Modrowski v. Pigatto*,
    712 F.3d 1166 (7th Cir. 2013) ..........................................................................................15

*Monell. Alcorn v. City of Chicago*,
    2018 WL 3614010 (N.D. Ill. 2018) ...................................................................................4

*Nelson v. Miller*,
    570 F.3d 868 (7th Cir. 2009) ............................................................................................12

*Owens v. Okure*,
    488 U.S. 235 (1989) ..........................................................................................................13

*Prince v. Campbell*,
    314 F. Supp. 2d 793 (N.D. Ill. 2004) ...............................................................................13

*Richmond v. Dart*,
    2013 WL 1174436 (N.D. Ill. 2013) ...................................................................................1

*Rollins v. Ellwood*,
    141 Ill. 2d 244 (1990) ......................................................................................................12

*Sedlock v. Baird*,
    235 Cal. App. 4th 874 (2015) .............................................................................................8

*Sossamon v. Texas*,
    563 U.S. 277 (2011) ..........................................................................................................12

*Spiegel v. McClintic*,
    916 F.3d 611 (7th Cir. 2019) ............................................................................................10

*Stevens v. Hous. Auth.*,
    663 F.3d 300 (7th Cir. 2011) ..............................................................................................9

*T.S. v. Twentieth Century Fox Television*,
    2017 WL 4620841 (N.D. Ill. 2017) .................................................................................11

*Tanzin v. Tanvir*,
    141 S.Ct. 486 (2020) ........................................................................................................12

*Uldrych v. VHS of Ill., Inc.*,
    942 N.E.2d 532 (Ill. 2011) ...............................................................................................13

*Vickery v. Jones,*
    100 F.3d 1334 (7th Cir. 1996) ................................................................................10

*Williams v. Seniff,*
    342 F.3d 774 (7th Cir. 2003) ............................................................................ 10, 11

*Wilson v. Warren Cnty.,*
    830 F.3d 464 (7th Cir. 2016) ................................................................................10

*Wilson v. Wexford Health Sources, Inc.,*
    932 F.3d 513 (7th Cir. 2019) ..................................................................................5

## STATUTES

745 ILCS 10/2-104 ..............................................................................................17

745 ILCS 10/2-109 ......................................................................................... 17, 18

745 ILCS 10/2-201 ..............................................................................................17

745 ILCS 10/2-202 ..............................................................................................18

745 ILCS 10/2-203 ..............................................................................................17

745 ILCS 10/8-101 ......................................................................................... 15, 16

775 ILCS 35/20 ....................................................................................................14

775 ILCS 35/5 ......................................................................................................16

## OTHER AUTHORITIES

Fed. R. Civ. P. 37(c) ..............................................................................................2

Fed. R. Evid. 602 ....................................................................................................2

L.R. 56.1 ................................................................................................................1

**INTRODUCTION**

Defendants[1] are entitled to summary judgment on Amontae's claims. Amontae fails to meet his burden both to raise a genuine dispute of material fact in opposition to Defendants' motions, and to supply undisputed facts in support of his own motion. Across his papers, Amontae argues without legal citation, mischaracterizes legal disputes as evidentiary ones, and ignores (thereby forfeiting) Defendants' legal arguments on the availability of damages and the requirements of *Monell*. Summary judgment for Defendants is proper because, as a matter of law, Defendants had no policies of religious discrimination and (to the extent damages are even legally available) caused Amontae no actual harm. Turning to the evidence, Amontae spouts "facts" without citation, misstates evidence, and otherwise relies on inadmissible materials. Amontae's failure to comply with L.R. 56.1 requires his purported facts to be stricken and Defendants' deemed admitted. Under the undisputed facts, Quiet Time did not trespass on the Establishment Clause and Amontae's IRFRA claim is barred. The Court should enter summary judgment for Defendants.

I.     **MOTION TO DEEM FACTS ADMITTED AND TO STRIKE**

A.     **Unsupported Or Inadmissible Statements Of Fact Should Be Stricken**

As a threshold matter, Defendants move to deem improperly contested facts admitted and to strike Amontae's unsupported facts. "Summary judgment is about the facts, meaning facts supported by evidence. A statement of fact, without supporting evidence, isn't a fact for purposes of a motion for summary judgment. It's just a statement, supported by nothing, so it counts for nothing." *Great Divide Ins. Co. v. Linda Constr., Inc.*, 2022 WL 294760, at *3 (N.D. Ill. 2022); *Richmond v. Dart*, 2013 WL 1174436, at *4 (N.D. Ill. 2013) (declining to consider facts without proper citations to the record or facts that are argumentative, assert legal conclusions, or improperly include additional facts). Rule 56.1

---

[1] Unless stated otherwise, all capitalized terms have the same meaning as in Defendants' Memorandum In Support Of Their Joint Motion For Summary Judgment (Dkt. 215) and Defendants Board and DLF's Memorandum Of Law In Support Of Their Motion For Summary Judgment (Dkt. 217).

requires Amontae to respond to Defendants' facts and to support his additional facts "by citation to the specific evidentiary material." L.R. 56.1. Throughout his summary judgment materials (Dkt. 224, 225, 226, 227, 228, 233) Amontae provides citations that do not support his facts or responses and continues to assert unsupported theories. Defendants ask the Court to strike Plaintiff's unsupported 56.1 statements (Dkt. 228 ¶¶ 5- 8, 15, 19-21, 24, 26, 28-36, 38, 42-44, 47, 52-57, 59-60, 65, 67, 70-71), 56.1 statements including improper legal argument (Dkt. 228 ¶¶ 3-4, 21, 23, 28, 38, 42, 48, 52, 54, 56, 60, 63, 64, 71), 56.1 statement with immaterial facts (Dkt. 228 ¶¶ 16-17, 24, 39, 35-37, 43-44, 63, 69-9, 71), 56.1 statements with inadmissible hearsay (Dkt. 228 ¶¶ 62-63, 66, 68) and responses to Defendants' statements of facts which are inadequately disputed (Dkt. 233 ¶¶ 8-11, 15-16, 18, 20-21, 25, 27-36, 38-43, 45, 48-53, 55-58, 60-62, 64, 67-68, 70-79).

**B.     Plaintiff's Submitted Affidavit Contain Inadmissible Evidence**

First, Amontae cites the affidavit of Mariyah Green (Pltf.'s Ex. 29), but he never disclosed Ms. Green as a witness, so Rule 37(c) prohibits her inclusion in opposing summary judgment. Fed. R. Civ. P. 37(c)(1). Rule 37(c) provides that if a party fails to identify a witness under Rule 26(a) or (e), the party may not use that information on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. *Id.* Moreover, this case no longer includes any class claims and Ms. Green has no relevant knowledge about Amontae's experience with TM at Bogan. Because her testimony is irrelevant to the remaining claims and Amontae makes no attempt to justify his failure to disclose, Defendants ask this Court to strike Plaintiff's Exhibit 29.

The Court should strike Amontae Williams' declarations where they conflict with his deposition testimony. The Seventh Circuit "does not allow [a party] to contradict deposition testimony with later-filed contradictory affidavits" to create " 'sham' issues of fact with affidavits that contradict their prior depositions." *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005). Throughout his summary judgment materials, and particularly in response to Defendants' 56.1 statements, Amontae

2

repeatedly cites his own affidavit to dispute his deposition testimony. *E.g.*, Dkt. 233 ¶ 39 (discussing his participation—or lack thereof—in the expression of gratitude), ¶ 45 (contradicting his sworn testimony that he only meditated about 25% of the time and discontinued meditating altogether), ¶ 67 (providing a different rationale for his discontinuation of TM) and ¶ 77 (contradicting his stated goal of this litigation). Defendants request that the Court disregard Amontae's declaration when it conflicts with his deposition testimony.

### C. The Testimony Of Plaintiff's "Expert" Witnesses Should Be Disregarded

In attempting to argue TM is religious, Amontae relies on testimony of his purported expert, Aryeh Siegel. Siegel is a real estate broker with no training or expertise in religious studies. Siegel admitted he knew few specifics about Quiet Time. Pltf.'s Ex. 6 at 30-34, 91-94. Siegel also conceded he reviewed no documents about Quiet Time and knew nothing about how TM was used within Quiet Time at CPS schools. *Id.* at 86, 183-84. Siegel has not even practiced TM since 1981 (when he co-authored a paper endorsing the practice as helpful in reducing prisoner violence). *Id.* at 28-29, 75-76, 100-05. Siegel's lack of any personal knowledge about Quiet Time makes his testimony irrelevant and inadmissible. It cannot be used to defeat summary judgment. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704-05 (7th Cir. 2009); Fed. R. Evid. 602.

## II. AMONTAE'S § 1983 CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT

To recover under 42 U.S.C. § 1983, Amontae must first establish municipal liability. *Kujawski v. Bd. Of Comm'rs of Bartholomew Cnty, Ind.*, 183 F.3d 734, 737 (7th Cir. 1999). He must show: (1) each Defendant intentionally and unlawfully deprived him of a constitutional right, and (2) the deprivation occurred under the color of state law. *Anderson v. Simon*, 217 F.3d 472, 475 (7th Cir. 2000). Finally, Amontae must demonstrate the violation of his constitutional rights caused him actual injury or damages. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). As discussed below, Amontae fails to

respond to many of Defendants' arguments on these elements, and the few arguments he asserts do not raise a question of fact sufficient to defeat summary judgment.

## A. Amontae Cannot Establish *Monell* Liability Against The Board

Amontae's response to the Board's *Monell* argument is insufficient to defeat summary judgment and reveals a basic misunderstanding of municipal liability. To establish liability, Amontae must show the alleged constitutional deprivation was caused by: (1) the enforcement of an express policy; (2) a widespread practice that is so permanent and well-settled it constitutes a custom or usage with force of law; or (3) a person with final policymaking authority. *Kujawski*, 183 F.3d at 737.

Amontae first asserts "[m]any principals and teachers underwent TM training," so they "knew the religious nature of TM." Dkt. 224 at 10. If this is an attempt to argue the final policymaker theory, then Amontae is off base. "In order to have final policymaking authority, an official must possess 'responsibility for making law or setting policy,' that is 'authority to adopt rules for the conduct of government." *Killinger v. Johnson*, 389 F.3d 765, 772 (7th Cir. 2004). "[T]he cases limit liability under section 1983 to situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final in the special sense that there is no higher authority." *Gernetzke v. Kenosha Un. Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001). Under Illinois law, the Board itself has final policymaking authority, and both case law and the Illinois School Code support this position. *See Jaythan E. v. Bd. of Ed. of Sykuta*, 219 F. Supp. 3d 840, 846-47 (N.D. Ill. 2016) (collecting cases). Amontae does not offer any evidence that "many principals and teachers" are Board officials with sufficient policy making authority.

Amontae next asserts liability under the express policy theory. Dkt. 224 at 10. There are two varieties of "express policy" claims under *Monell*. *Alcorn v. City of Chicago*, 2018 WL 3614010, at *15 (N.D. Ill. 2018). The first applies, "as the name suggests, where a policy explicitly violates a constitutional right when enforced." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (citing *Monell*,

436 U.S. at 658). To prevail on this first variation, a plaintiff must identify specific language in the policy that explicitly violates a person's constitutional rights. *Id.* at 381. The second variation of an "express policy" claim applies when the plaintiff "object[s] to omissions in the policy," *i.e.*, that the policy fails to address certain issues. *Id.* at 380. Here, Amontae has not identified any Board policy and instead identifies "'The David Lynch Foundation Quiet Time Evaluation' at first in 2015 and on many subsequent occasions through Master Services Agreements with DLF and separately with the University." Dkt 224 at 10. Amontae offers no legal authority for the justification that a written contract is a policy, and even if he did, he has identified no specific language that explicitly violates his constitutional rights. Rather, the 2018 agreement between DLF and the Board, for example, states the agreed-upon goal of Quiet Time was to "positively affect the stress response enough to meaningfully impact students, leading to reduced negative behaviors and improved academic performance." *See* Dkt. 216 (hereinafter "SOF") ¶ 21. Even if the cited contracts could be used to establish municipal liability under this theory of *Monell* liability, his claim still fails as a matter of law because Amontae must also show, through *deliberate* conduct, the policy was the "moving force" behind the injury alleged. *See J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020). Because Amontae failed to do so, his claim cannot survive summary judgment.

### B.    Amontae Has Forfeited DLF's *Monell* Argument

DLF is a private, not-for-profit corporation. SOF ¶ 4. As DLF argued in its opening brief (Dkt. 217 at 5-10), *Monell* applies to private corporations sued under a state action theory: "a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Iskander v. Vill. Of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *accord Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 522 (7th Cir. 2019) ("[W]e have chosen to leave *Iskander* undisturbed."). Amontae fails to respond *at all* to DLF's *Monell* argument. *Compare* Dkt. 217 at 12-14 *with* Dkt. 224. His failure to respond operates as a waiver of any argument against entry of judgment on that basis; Amontae

has thus conceded his § 1983 claim against DLF. *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999); *see also Cooper v. Retrieval-Masters Credit Bureau, Inc.*, 2017 WL 2404952, at *3 (N.D. Ill. 2017) (failure to respond to an argument forfeits it). DLF is entitled to summary judgment in its favor on Amontae's § 1983 claim.

## C. Amontae Cannot Establish Deprivation Of A Constitutional Right

Quiet Time did not violate Amontae's rights under the Establishment and Free Exercise Clauses of the First Amendment. *See* Dkt. 217 at 10-19. In both his opposition and cross-motion on religiosity (Dkt. 224, 227), Amontae does not address Defendants' authority or engage in a substantive Establishment Clause analysis. He ignores the Supreme Court's most recent pronouncement that "[a]n Establishment Clause violation does not automatically follow whenever a public school 'fails to censor' private religious speech. Nor does the Clause 'compel the government to purge from the public sphere' anything an objective observer could reasonably infer endorses or 'partakes of the religious.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2427 (2022). He also ignores an abundance of precedent that looked to "historical practices and understandings" and concluded periods of quiet activity during the school day do not endorse, much less coerce, religion even if they provide an opportunity for prayer or silent reflection, especially when that opportunity is optional. *See* Dkt. 217 at. 11-18 (citing cases).

Amontae improperly cherry-picks a one-time, three-minute expression of gratitude the instructor performed before teaching students the TM technique and thereby labels the entire program "religious." Dkt. 224 at 6. First Amendment jurisprudence determines a program's constitutionality by examination of the program and its implementation as a whole, not a singular component. *See Lynch v. Donnelly*, 465 U.S. 668, 680 (1984) ("Focus exclusively on the religious component of any activity would inevitably lead to its invalidation under the Establishment Clause."). Amontae's failure to

analyze the entire Quiet Time program and how TM was used within it does the opposite of what *Lynch* instructs.

Amontae admitted he understood TM was optional and he volunteered to learn it to find "a better form of mediation." SOF ¶ 58. He was not "coerced" to learn TM. Dkt. 224 at 6-7. As he has throughout this case, Amontae conflates Quiet Time, where all students engaged in some type of quiet activity for 15 minutes a day, and TM, which students could optionally volunteer to learn. SOF ¶¶ 50-52. The record reflects students did not have to learn TM if they did not want to, nor were they required to practice it after learning TM. *Id.* ¶¶ 22, 24, 28-29, 30, 39, 45, 55, 58, 67.

Amontae's 40-year-old lead case, *Malnak,* is distinguishable. *See Malnak v. Yogi*, 592 F.2d 197 (3d Cir. 1979). Unlike the "Quiet Time" program at issue, the curriculum in *Malnak* involved a classroom course taught to students four to five days a week in the Science of Creative Intelligence ("SCI"). *Id.* at 198. The SCI class used a 225-page textbook to teach students that "pure creative intelligence is the basis of life," and that TM was the "origin of all power in nature." *See Malnak*, 440 F. Supp. at 1290-91. As noted in Judge Adams' concurrence, "[a]lthough Transcendental Meditation by itself might be defended as appellants sought to do in this appeal as primarily a relaxation or concentration technique with no ultimate significance, the New Jersey course at issue here was not a course in TM alone, but a course in the [SCI]." *Malnak*, 592 F.2d at 213 (Adams, J., concurring).[2] Amontae offers no evidence of mandatory curriculum accompanying TM at Bogan. Rather, TM was

---

[2] The SCI program and Quiet Time are distinguishable for other reasons as well. The SCI teachers were in an organization whose objective is to "disseminate the teachings of SCI/TM throughout the United States." *Malnak*, 592 F.2d at 197. In comparison, DLF's objective in using TM in its programming was to use it as a non-religious technique not associated with any belief system to reduce toxic stress. Dkt. 233 ¶ 8. Further, students in Malnak were told to bring items to a ceremony called a "Puja" that the Third Circuit stated lasted between one and two hours. *Malnak*, 592 F.2d at 197. No students in Quiet Time brought any items to a three-minute exercise conducted by the instructor that was referred to and explained as an "expression of gratitude." Dkt. 233 ¶¶ 38-39.

taught in CPS schools to the students who opted to learn it as a relaxation technique, not with any class or course study in religion. SOF ¶¶ 22, 34.

In the years since *Malnak*, TM, like yoga, has evolved into a widespread secular practice and the subject of peer review studies on its potential health benefits. *See Sedlock v. Baird*, 235 Cal. App. 4th 874, 892-99 (2015). At the same time, the Supreme Court has abrogated the more restrictive *Lemon* test, which *Malnak* applied. *See* 592 F.2d at 200 (Adam, J. concurring). Recent Supreme Court precedent looks to "historical practices and understandings" in assessing the Establishment Clause. *Kennedy*, 142 S. Ct. at 2428. As set forth in Defendants' opening brief (Dkt. 217 at 10-19), even in the light most favorable to Amontae, the undisputed facts do not support § 1983 liability.

### D. Amontae Has Forfeited His Claim For Damages

In their opening briefs, Defendants demonstrated Amontae's claims are moot because he disclaimed recovery of all monetary damages, including nominal damages, at his deposition. *See* Dkt. 217 at 19-22. Amontae's briefing ignores this argument and in doing so, forfeits his claim to damages under both § 1983 and IRFRA, which provides this Court an independent basis to grant Defendants' motion for summary judgment. *Caruso*, 197 F.3d at 1197.

Additionally, Amontae fails to cite evidence supporting his claim for compensatory damages based on alleged "emotional distress." *See* Dkt. 89 ¶¶ 117, 125. Defendants' motion explains why emotional damages are not recoverable. *See* Dkt. 217 at 21-24. Amontae's response is a bare paragraph citing no legal authority. Dkt. 224 at 14; Dkt. 225 at 8. He first asserts "as a minor, he may but need not show specific harm to his faith or emotions." *Id.* Putting aside that Amontae was an adult, not a minor, when he first learned TM (SOF ¶¶ 57-59, Dkt. 203 at 11), this argument is unsupported. That is unsurprising, since the law is the opposite: proof of damages is a required element of a § 1983 claim. *Lord*, 952 F.3d at 905. Indeed, a court may not award damages simply to account for "the abstract value of a constitutional right." *Horina v. Granite City,* 538 F.3d 624, 637-38 (7th Cir. 2008). Rather, a

plaintiff must "show 'demonstrable emotional distress,' and may not simply point to circumstances of the alleged constitutional violation which might support an inference of emotional injury." *Stevens v. Hous. Auth.*, 663 F.3d 300, 308 (7th Cir. 2011).

Amontae's next argument is that he can recover compensatory damages for emotional distress for "getting sent to the principal's office" and "being threatened with suspension." Dkt. 224 at 14. Amontae again cites no case law for this proposition. Nor does Amontae detail any actual emotional harm that resulted from such action. *Stevens*, 663 F.3d at 308. Instead, he only offers the following unsupported assertion: "Could a reasonable trier of fact conclude that Amontae suffered emotionally from such experience? Of course!" Dkt. 225 at 8. That is not an argument: "including an exclamation point does not make a cryptic sentence an argument or provide the Court with further analysis." *Martinez v. Colvin*, 2014 WL 1305067, at *9 (N.D. Ill. 2014). This Court need not sift through the record to find evidence of the existence, nature, or amount of Amontae's purported emotional distress when Amontae has provided no such evidence. *Id.* ("Parties should not view judges as bloodhounds who are merely given a whiff of an argument and then expected to search the record high and low in an effort to track down evidence[.]"); *see also Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

## III. THE UNIVERSITY AND DLF SHOULD BE DISMISSED AS PRIVATE ACTORS

Amontae has failed to raise a genuine issue of material fact that DLF or the University engaged in state action under Section 1983 or IRFRA (*see* Dkt. 215 at 14-16, Dkt. 217 at 7-10), much less affirmatively establish undisputed facts to support state action (*see* Dkt. 217 at 3-7). Amontae's core allegation is that "DLF, the Board, and the University all partnered together extensively…to bring Quiet Time and transcendental meditation to Plaintiff's classroom." Dkt. 224 at 11-14; Dkt. 225 at 2-5, Dkt. 227 at 3-4. But under Amontae's acknowledged case law (Dkt. 225 at 2), the University and DLF must have engaged in a willful conspiracy with the Board to deprive individuals of constitutional

rights, not a mere public-private partnership to deliver a program. *See Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). Providing aid or encouragement to a state actor does not amount to a conspiracy. *Id.* at 616. Nor does merely "working together." *Craig v. City of Chicago*, 2011 WL 1196803, at *14 (N.D. Ill. 2011). More is required: private and state actors must have "had a meeting of the minds and thus reached an understanding" to deny Amontae a constitutional right. *Wilson v. Warren Cnty.*, 830 F.3d 464, 468 (7th Cir. 2016) (public and private actors must share a "common, unconstitutional goal"); *accord Linda Constr. Inc. v. Allied Waste Indus.*, 2017 WL 1196889, at *7 (N.D. Ill. 2017) (no conspiracy where conspiracy allegations "can be summed up in four words: they knew each other").

Amontae's evidence shows at most a standard public-private partnership. Private defendants do not engage in state action when they work with, make recommendations to, or even provide guidelines to government officials, so long as the government official retains the ultimate authority to accept or reject the private proposals. *See Vickery v. Jones*, 100 F.3d 1334, 1345 (7th Cir. 1996) (collecting cases). Amontae repeatedly acknowledges the Board (the only government Defendant) had "final authority" to authorize Quiet Time. Dkt. 224 at 9-10; Dkt. 217 at 4-5, 10. The Board in turn entered into services agreements with the University and DLF delineating their respective roles for Quiet Time. SOF ¶¶ 20-21. But a "contract" or "agreement" is "insufficient to constitute state action." *Evans v. Torres*, 1996 WL 5319, at *7 (N.D. Ill. Jan. 4, 1996). Neither contract references religion; instead they denote Quiet Time's secular purpose—the reduction of student toxic stress. SOF ¶¶ 20-21, Defs.' Exs. 20, 38. All other evidence Plaintiff cites is likewise irrelevant: administrative meetings (Dkt. 225 at 4), data-sharing arrangements (Dkt. 227 at 5), research authorizations (*id.*), pizza parties (*id.* at 7), and logo-stamped program materials (*id.* at 3) —all of which were silent regarding religion—do not evince a "meeting of the minds and mutual understanding" to accomplish a "common, unconstitutional goal." *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991); *see also Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003).

Amontae also cites no evidence of willfulness. He instead advances a conspiracy theory based on negligence. *See*, *e.g.*, Dkt. 224 at 9-10, (the Board "should have known" Quiet Time purpose was "to teach a Hindu religion as a practice"); *id.* at 13 (Defendants "should have known or done their due diligence to find out that [TM] is based in Hindu religion"); Dkt. 225 at 4 (the University "presumably learned" of the "religious aspects"). But "[a]ccidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133–34 (1999); *T.S. v. Twentieth Century Fox Television*, 2017 WL 4620841, at *4-6 (N.D. Ill. 2017) (dismissing conspiracy claims). Summary judgment is the "'put up or shut up' moment in a lawsuit." *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Yet Amontae has offered no evidence that rises to the level of a willful private-public conspiracy. *See Williams*, 342 F.3d at 785 (evidence of a conspiracy "cannot be speculative").

Amontae cites no evidence or case law to support his conclusory claim that using TM as an optional component of Quiet Time was the equivalent of Defendants reaching a "mutual understanding" to deprive him of his religious constitutional rights. *See* Dkt. 224 at 12. "A party cannot merely cry 'conspiracy' and throw itself at the mercy of the jury nor can a party resist a summary judgment by pointing to snippets of a deposition when the point of every witness' statement was that there was no agreement[.]" *Holdeman v. Consol. Rail Corp.*, 649 F. Supp. 1188, 1196 (N.D. Ind. 1986). The University and DLF should be dismissed from this litigation because they are private actors. Amontae has offered no evidence that either the University and DLF engaged in a willful conspiracy to deprive him of his religious civil rights.

## IV.    AMONTAE'S IRFRA CLAIM SHOULD BE DISMISSED

### A.    Damages Are Not Available Under IRFRA

Amontae's IRFRA claim is barred because damages are not available under IRFRA. As explained in Defendants' opening memorandum (Dkt. 215 at 7-11), neither IRFRA's text, nor its

legislative history, nor the past 25 years of judicial opinions have ever expressly endorsed recovery of damages as "appropriate relief." 775 ILCS 35/20.

Amontae cites *Nelson v. Miller*, 570 F.3d 868, 885 (7th Cir. 2009) for the proposition that "IRFRA leaves open the possibility of monetary damages." Dkt. 225 at 9. He fails to explain, however, that—due to sovereign immunity—*Nelson* refused to recognize damages under both IRFRA and the identical "appropriate relief" language in the federal RLUIPA. The Supreme Court later endorsed *Nelson* when it held "appropriate relief" is an "inherently context dependent" standard that does not authorize RLUIPA damages. *Sossamon v. Texas*, 563 U.S. 277, 286-88 (2011). Although sovereign immunity does not apply to Defendants here, IRFRA's context warrants against recognizing a state law damages remedy as "appropriate relief." *See* Dkt. 215 at 7-11.

Amontae further asserts without citation that "[t]he actual wording of IRFRA allowing for 'appropriate relief' is not specifically defined in the statute and should be construed to parallel federal law to include actual and nominal damages." Dkt. 225 at 8. Amontae appears to be referencing *Tanzin v. Tanvir*, a recent U.S. Supreme Court decision holding federal damages claims may be brought against individual-capacity federal agents under the federal RFRA. 141 S. Ct. 486, 492-93 (2020). Again, the Illinois state law context differs from the federal RFRA. The availability of damages under Illinois state law—as enacted by the Illinois legislature and interpreted by Illinois courts—cannot be altered by subsequent U.S. Supreme Court application of the federal RFRA to federal actors. *See, e.g., Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990) (holding Illinois courts should only view federal constructions of federal law as persuasive). After all, the federal RFRA constitutionally does not apply to states. *See City of Boerne v. Flores*, 521 U.S. 507, 532 (1997).

Illinois has never recognized implied constitutional or statutory claims for religious damages, and courts applying IRFRA have never awarded damages. Dkt. 215 at 7-11. For the reasons set forth in Defendants' opening brief, damages are not an appropriate IRFRA remedy under Illinois law.

### B.    The Tort Immunity Act's Statute Of Limitations Bars Amontae's IRFRA Claim

Amontae's IRFRA claim against all Defendants is also barred by the Illinois Local Government Tort Immunity Act's one-year statute of limitations. *See* 745 ILCS 10/8-101. "Determining which statute of limitations applies to a particular claim is a question of law[.]" *KDC Foods, Inc. v. Gray, Plant, Mooty, Mooty, & Bennett, P.A.*, 763 F.3d 743, 749 (7th Cir. 2014); *accord Uldrych v. VHS of Ill., Inc.*, 942 N.E.2d 532, 540 (Ill. 2011). Amontae admits the Board is a local government. Dkt. 233 ¶ 2. And this Court already held that "[d]ue to the Board's status as a governmental entity, the IRFRA claim against the Board is subject to a one-year statute of limitations." Dkt. 65 at 31.

Amontae does not dispute the last possible day of accrual for his IRFRA claim was June 18, 2019. *See* Dkt. 225 at 6-7; Dkt. 233 ¶¶ 1, 71 (admitting graduation date). Nor does he dispute he sued 14 months later, on August 3, 2020. *See* Compl. (Dkt. 1). In addition, Amontae raises no legal or factual dispute with the same limitations period applying to the University and DLF (Dkt. 215 at 12-13). Indeed, Amontae seeks summary judgment on the basis that the University and DLF purportedly acted under color of state law. Dkt. 227 at 3-7; *Cf. Prince v. Campbell*, 314 F. Supp. 2d 793, 795 (N.D. Ill. 2004) (dismissing complaint alleging state action by private actor as time-barred). If the University and DLF engaged in state action (*but see* disc. *supra* 9-11) with respect to Quiet Time, Amontae's claim is time-barred. And if the University and DLF did not act as "governments" (*see* 775 ILCS 35/5), then Amontae has no IRFRA claim against them at all. *See* disc. infra 14-15.

Citing no authority, Amontae contends "by analogy to federal law," the two-year statute of limitations applicable to his § 1983 claim should also apply to his state law claim. Dkt. 225 at 6. Because a more targeted one-year state law statute of limitations already applies to Amontae's state law claim (*see* 745 ILCS 10/8-101; Dkt. 65 at 31), the Court should not apply the federal "borrowing" doctrines which govern Section 1983. *E.g. Owens v. Okure*, 488 U.S. 235, 239, 250 (1989) ("[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims

should borrow the general or residual statute."). State law applies in the first instance. Amontae's IRFRA claim is time-barred by a one-year statute of limitations and should be dismissed.

### C.      The Tort Immunity Act Further Bars Damages For Amontae's IRFRA Claim

Amontae's IRFRA claim also fails because (if IRFRA damages exist) the Tort Immunity Act bars their recovery. "Interpretation of the Tort Immunity Act is a question of law appropriate for summary judgment." *Dixon v. Chi. Bd. of Educ.*, 710 N.E.2d 112, 115 (Ill. App. Ct. 1999). As explained in Defendants' opening brief (Dkt. 215 at 13-14), the Tort Immunity Act immunizes the Board and its employees (including volunteers) for the exercise of their ordinary responsibilities. *See* 745 ILCS 10/2-104; 745 ILCS 10/2-201. Amontae does not dispute the Board is a local government (Dkt. 233 ¶ 2) and provides no evidence to contradict University[3] researchers acting as volunteers at Bogan High School (*id.* ¶ 49). *See* Dkt 225 at 7 (not raising contrary argument in opposition).

Amontae asserts in a single paragraph (without legal citation) the Tort Immunity Act only applies to "negligent acts" and not to Defendants' "discretionary and deliberate acts" in alleged violation of the First Amendment.[4] Dkt. 225 at 7. Amontae is wrong. <u>First</u>, the Tort Immunity Act protects local governments from damages liability for both "discretionary" actions as well as employees' unconstitutional actions taken without "malice." *See* 745 ILCS 10/2-104; 745 ILCS 10/2-109; 745 ILCS 10/2-201; 745 ILCS 10/2-203. Amontae does not claim, let alone cite evidence, that Defendants acted with malice. <u>Second</u>, Amontae's IRFRA claim is *not* a federal First Amendment claim; the Illinois legislature is free to insulate local governments from damages arising under state law. *Harris v. Thompson*, 976 N.E.2d 999, 1005 (Ill. 2012). <u>Third</u>, Amontae's bare reference to "alleged" constitutional violations does not defeat summary judgment. A nonmovant "must 'go beyond the

---

[3] This Tort Immunity Act argument does not apply to DLF.
[4] There is no § 1983 First Amendment claim against the University. Dkt. 81 at 13.

pleadings'" to show there is evidence "'upon which a jury could properly proceed to find a verdict' in [their] favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013).

Under the Tort Immunity Act, a local government cannot be liable for damages if the employee who committed the alleged injury is not liable. 745 ILCS 10/2-109. With respect to a failure to enforce a law, an employee can only be held liable for "willful and wanton conduct." 745 Ill. Comp. Stat. Ann. 10/2-202. Amontae offers zero facts that any specifically named local government employees or volunteers engaged in willful, deliberate, or malicious acts to violate Amontae's religious civil rights, as would be required to overcome immunity. *See McCullogh v. Godley Park Dist.*, 2011 WL 10468086, at *2 (Ill. App. Ct. 2011) (granting summary judgment under Tort Immunity Act where there were "no facts in the record that would support a finding that the defendant had an actual or deliberate intention to cause harm"). Nor could he. *See* disc. *supra* 11. Without such evidence, Amontae's IRFRA claim must be dismissed under the Tort Immunity Act.

## <u>CONCLUSION</u>

For the reasons stated above and in their opening memoranda, Defendants respectfully ask this Court to grant summary judgment in their favor, dismiss Amontae's remaining claims, enter judgment in their favor, award litigation costs, and grant any other relief the Court deems just and proper.

Date:   January 26, 2023

Respectfully submitted,

**The University of Chicago**

/s/ Johanna Spellman

Johanna Spellman, One of the Attorneys
for Defendant The University of Chicago
Mark S. Mester (IL Bar No. 6196140)
   mark.mester@lw.com
Johanna Spellman (IL Bar No. 6293851)
   johanna.spellman@lw.com
Renatta Gorski (IL Bar No. 6332737)
   renatta.gorski@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Carolyn M. Homer (pro hac vice)
   carolyn.homer@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

**Defendant Board of Education
of the City of Chicago
Joseph Moriarty**, General Counsel

/s/ Elizabeth K. Barton (with consent)
Elizabeth K. Barton, Atty No. 6295848

Elizabeth K. Barton / ekbarton@cps.edu
Kaitlin T. Salisbury / ktsalisbury@cps.edu
Christina L. Rosenberg / crosenberg@cps.edu
The Board of Education of the City of Chicago
Law Department
1 N. Dearborn St., #900
Chicago, IL 60602

**The David Lynch Foundation**

/s/ James J. Sipchen (with consent)
James J. Sipchen, Atty No. 6226113

James J. Sipchen
   jsipchen@pretzelstouffer.com
Pretzel & Stouffer, Chartered
One S. Wacker Drive - Suite 2500
Chicago, IL 60606-4673

16

## <u>CERTIFICATE OF SERVICE</u>

I, Johanna Spellman, hereby certify that I served the attached **Defendants' Reply Brief In Support of Summary Judgment** on counsel of record via the Court's CM-ECF E-Filing on January 26, 2023.


/s/ Johanna Spellman
Johanna Spellman